**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X

JOHN STANISE,

Civil Action No.: 20-cv-2769

                        Plaintiff,

**COMPLAINT**

       - against -

VICTOR LORIA,

                        Defendant.

------------------------------------------------------------------------X

COMES NOW JOHN STANISE, (hereinafter "Mr. Stanise", "Stanise" or "Plaintiff"), by and through his undersigned counsel, The Law Offices of Neal Brickman, P.C., located at 420 Lexington Avenue, Suite 2440, New York, New York 10170, states and alleges against Defendant, Victor Loria (hereinafter "Loria" or "Defendant"), as follows:

1.     This is an action sounding in breach of contract and breach of fiduciary duty between the two partners and members of a Delaware limited liability company, LORSTAN PHARMACEUTICAL, LLC ("Lorstan" or the "Company"), which arises from the wrongful and illegal acts of Loria undertaken in violation of the controlling Operating Agreement and subsequent amendments thereto.

## PRELIMINARY STATEMENT

2.     Mr. Stanise is a Certified Public Accountant and is a 30% equity member of Lorstan, where he serves as the Company's Chief Executive Officer, with the remaining membership units of the Company being held and controlled by Loria, a physician serving as the Company's Chief Medical Officer. The Company was formed on or about May 19, 2016, with

Stanise and Loria simultaneously entering into an Operating Agreement (the "Agreement"), which set forth the terms upon which the Company would be operated. A true and accurate copy of the Agreement and the accompanying amendments are collectively annexed hereto as **Exhibit "A"**.

3.       In early 2020, Loria began to undertake a course of actions that were in direct violation of the Agreement and his fiduciary duties owed to the Company, including but not limited to pursuing additional offices for his own personal benefit under his Loria Medical brand name, soliciting current Lorstan licensees to join him in opening up new offices under his Loria Medical brand name, hindering Lorstan's ability to continue its business successfully by refusing to allow business operations to proceed under agreed upon protocols such as creating unreasonable new barriers of entry to train newly recruited doctors and requiring those doctors to get loans to afford training from him when previous doctors were trained for free or under an arrangement where training costs would be a reimbursement of any patient discount provided. Additionally, Loria has created an unreasonable new barrier for new licensees to have temporary use of photographs, when no other licensee has had to pay for the temporary use of photos. Furthermore, Loria threatened the Company's pharmaceutical sub-contractor's license resulting in her resignation and has refused to engage in conversations with Stanise as required to advance the Company's business. Loria has rejected attractive investment opportunities which have repeatedly presented themselves, refused to fund his share of capital requirements and has refused to fund payroll telling Stanise that essential employees necessary to run normal operations need to be fired. Loria's escalating course of conduct has now escalated to ultra vires acts such as closing the Company's business checking account which is used to process payroll and payroll taxes.

## JURISDICTION

4.      This Court has diversity jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and more than $75,000, exclusive of interest and costs, is at stake in this controversy. Furthermore, Paragraph 19.7 (b) of the Agreement sets forth that each party submits to the jurisdiction of the United States District Court for the Southern District of New York for purposes of all legal proceedings arising out of or relating to the Agreement.

## VENUE

5.      This action is properly laid in the United States District Court for Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because the Company does business, solicits business and stands to do substantial future business in this district and because Loria has threatened to open a New York based office away from the company, portions of the harm have therefore occurred and will occur within this district, and furthermore the parties agreed within Paragraph 19.7 (b) of the Agreement that each party waives to the fullest extent permitted by law, any objection which is may now or hereafter have to the venue of any such proceeding brought in the United States District Court for the Southern District of New York and any claim that any such proceeding brought in said Court has been brought in an inconvenient forum.

## PARTIES

6.      John Stanise is a resident of the State of Connecticut who at all relevant times served as Lorstan's Chief Executive Officer and was a member owning 30% of the Company.

7.      Victor Loria is a resident of Florida who at all relevant times served as Lorstan's Chief Medical Officer and was a member owning 70% of the Company.

## STATEMENT OF FACTS

8.     On or about May 19. 2016, the Plaintiff and the Defendant (collectively the "Members") entered into a formal written Operating Agreement while simultaneously forming Lorstan, a limited liability company in which Plaintiff was a 30 percent owner and the Defendant was a 70 percent owner.  (See Exhibit "A" pp. 6, 38).

9.     The Company was formed solely for the purpose of for-profit development, licensing, exploitation and commercialization of a pharmaceutical compound identified as a silicone oil based compound, or its derivatives, and the pending and existing patents which include but are not limited to the U.S. Patent filed under Application Serial No. 15/405.240 titled "Silicone Oil-In-Water Composition Useful As An Injectable Filler And As A Scaffold For Collagen Growth". (See Exhibit "A" pp. 7, 39).

10.    The Members acknowledged, agreed and consented to the delegation of power and authority pursuant to the Agreement and that a Member shall be obligated to indemnify the Company for any costs or damages incurred by the Company as a result of the unauthorized action of such Member, with any difference arising as to any matter within the authority of a Member shall be determined by the Company's Board. (See Exhibit "A" p. 9, ℙ 6.1).

11.    The Members further agreed that any vote on any matter under the Agreement shall be approved upon achieving a majority defined as having 71% of the units of all Members entitled to vote.  (See Exhibit "A" p. 10, ℙ 6.3).

12.    Given the ownership structure of the Company (30 percent/70 percent ownership split) and the terms of the Agreement, the voting requirements of a 71 percent majority, requires both Members to be in Agreement for any decision or difference to be resolved by vote. (See Exhibit "A" pp. 10, ℙ 6.3, 38).

13.     The power and authority to manage the Company's business is vested in the Company's Board and except as expressly authorized in writing by the Board or the Agreement, no Member shall directly or indirectly act as agent of the Company for any purpose, engage in any transaction, make any commitment, enter into any contract, or incur any obligation in the name of the Company or in any other way hold itself out as acting for or on behalf of the Company, and a Member shall be obligated to indemnify the Company for any costs or damages incurred by the Company a result of the unauthorized action of such Member. (See Exhibit "A" p. 12, ¶ 7.1(a)).

14.     The Agreement provides that the Company's Board shall consist of two (2) individuals, with each initial Member having the right to appoint one representative to the Board. (See Exhibit "A" p. 13, ¶ 7.1(b)).

15.     The Agreement further provides that the Board may determine from time to time that additional Capital Contributions are needed to enable the Company to conduct its business and upon making such a determination, the Board shall give Notice to all Members prior to the date on which such contribution is due. (See Exhibit "A" p. 15, ¶ 8.1(b)).

16.     Pursuant Paragraph 17.1 of the Agreement, no Member shall have any obligation to any other Member or the Company to present any business opportunity to any other Member or the Company provided however, that:

(a) "Dr. Victor Loria shall be obligated to contribute to the Company without any consideration any intellectual property including, but not limited to know how, going concern value, patent(s) and patent applications related to the pharmaceutical compound identified as a silicone oil based compound, or its derivatives, and shall not pursue commercialization of such compound individually or through any other Person;

(b) Should Dr. Victor Loria decide to pursue the creation of a compounding pharmacy for the purpose of manufacturing a silicone oil based compound, or its derivatives, it shall be operated as a wholly owned subsidiary of the Company.   (See Exhibit "A" p. 27, ¶ 17.1 (a) and (b).

17.     Paragraph 19.8 of the Agreement entitled <u>Remedies</u> states that:

"Each party hereto acknowledges and agrees that the remedies at law for a breach or threatened breach of any of the provisions of this Agreement that affect the rights of the other parties hereto would be inadequate and, in recognition of this fact, agrees that, in the event of such a breach or threatened breach, in addition to any remedies at law, each party hereto shall be entitled to equitable relief in the form of specific performance, temporary retraining order, temporary or permanent injunction, or any other equitable remedy which may then be available, without the necessity of proving irreparable harm. Each party hereby stipulates and agrees that in the event of such a breach or threatened breach, the other parties hereto will suffer irreparable harm." (See Exhibit "A" pp. 29-30, ⁋ 19.8).

18.     Plaintiff and Defendant operated under the terms of the Agreement since the inception of the business with a series of amendments having been made since the execution of the Agreement.

19.     An Amendment to the Lorstan Pharmaceutical, LLC Operating Agreement (the "First Amendment") was made on March 30, 2018. A true and accurate copy of the First Amendment is annexed hereto as Exhibit "B".

20.     Pursuant to the First Amendment, Paragraph 1, it is reiterated and agreed that the Company is formed solely for the purposes of (i) for-profit development, licensing, exploitation, and commercialization of a pharmaceutical compound identified as silicone oil base compound, or its derivatives, and any existing or pending patents. (See Exhibit "B" p. 1, ¶ 1).

21.     The First Amendment further revises Section 17.1 to state as follows:

"17.1 <u>No Other Obligations</u>. Except as otherwise set forth herein, no Member (including its directors, officers, employees, shareholders, and Affiliates) shall have any obligation to any other Member or the Company to present any business opportunity to the company or to refrain from taking any such opportunity for its own account individually or as a partner, member, shareholder, or otherwise) or from recommending any such opportunity to others, or to refrain from engaging in any business or possessing an interest in any other venues of any nature or description, independently or with others, for its own account; provided however,

      (b) Dr. Victor Loria shall not pursue, directly or indirectly, other than through Company or a management company which is a subsidiary of Company, any commercial ventures relating to the opening of multiple medical offices.

      (c) Dr. Victor Loria shall not pursue, directly or indirectly, other than through Company, any commercial ventures derived from the introduction of Dr. Loria to any Person by John Stanise." (See Exhibit "B" p. 2 ¶ 3.)

22.    Amendment #2 to the Lorstan Pharmaceutical, LLC Operating Agreement (the "Second Amendment") was executed on January 13, 2019. A true and accurate copy of the Second Amendment is annexed hereto as Exhibit "C".

23.    No portion of the Second Amendment makes material changes to any of the provisions of the Agreement or the First Amendment as cited within this Complaint. (See Exhibits "A", "B" and "C".)

24.    Amendment #3 to the Lorstan Pharmaceutical, LLC Operating  Agreement ("the Third Amendment") was executed on May 9, 2019. A true and accurate copy of the Third Amendment is annexed hereto as Exhibit "D".

25.    The Third Amendment's sole purpose was to delete the entirety of Section 17.1(a) as defined within the First Amendment, which section dealt exclusively to Loria's line of business concerning hair implants. (See Exhibits "B" and "D".)

26.    The Third Amendment made no changes to any of the provisions of the Agreement or the First Amendment as cited within this Complaint other than removing ¶ 17.1(a) and does not impact the relevant terms, covenants and/or obligations of the Members as set forth herein. (See Exhibits "A", "B", "C" and "D".)

27.    The Company currently holds a U.S. patent procured pursuant to the patent application filed under Application Serial No. 15/405.240 that was allowed in January of 2018 for

"Silicone Oil-In-Water Composition Useful As An Injectable Filler And As A Scaffold For Collagen Growth".

28.     The Company's current business model involves the licensing of medical technology to physicians so as to allow physicians to perform a specific medical procedure using this unique patented compound.

29.     The business model requires Loria training licensee physicians and requires the Company's trained pharmacist to work as a sub-contractor with licensee physicians to assist the licensees in compounding their own pharmaceuticals needed to perform the medical procedure.

30.     As the Company's Chief Medical Officer, Loria had defined duties and obligations pertaining to the training of licensees and to provide technical advice as required regarding compound and medical procedure matters.

31.     As the Company's Chief Executive Officer, Stanise had defined duties and obligations pertaining to the business operations of the Company, including but not limited to maintaining the books and records, hiring and ensuring the payment of necessary employees and consultants and ensuring that the payroll taxes were paid, as necessary.

32.     Stanise's day-to-day responsibilities included executing the Company's business plan, acquiring necessary industry knowledge, forging required business relationships and coordinating all efforts needed for advancing the Company.

33.     Stanise was also responsible for and has continued to fulfill his duties and responsibilities to building the Company by, recruiting potential licensee physicians, recruiting potential investors and coordinating assistance for future marketing efforts to aid licensees in procuring patients.

34.     Stanise has been completely transparent with respect to his duties and responsibilities and has sent all relevant books, records and financial information regarding the operation of the Company to Loria's independent accountant, who has advised both Members that everything was in order and properly accounted for.

35.     Beginning in early 2020, Loria began an escalated campaign waged through actions and words aimed at forcing his partner Stanise to renegotiate the terms of their Agreement.

36.     Loria's attempts to force renegotiation included refusing to fulfill his duties as Chief Medical Officer of the Company by refusing to train doctors or to provide advisory services until Plaintiff agreed to renegotiate the terms of the Agreement in accordance with Defendant's wishes.

37.     The actions undertaken by the Defendant to directly interfere with the Company's success include but are not limited to:

   a.   Continuous refusal to fund payroll or make capital contributions towards the Company's necessary business operations;

   b.   Demanding that essential staff members be tasked with unwarranted reporting protocols;

   c.   Demanding that the existing staff, all of which were essential for necessary business operations, be fired;

   d.   Closing the Company's corporate bank account and withdrawing the funds used for necessary operation expenses including but not limited to payroll and payroll taxes;

e.   Refusing to provide necessary medical and/or pharmaceutical expertise and technical assistance required for the normal operations of the Company's business;

f.   Hindering the Company's ability to continue its business successfully by creating sabotaging roadblocks to an agreed upon protocol and business plan, contrary to the historical way that the Company had operated;

g.   Creating unreasonable new barriers of entry to train new incoming doctors by requiring those doctors to get loans to afford costly training provided by the Defendant, with the proceeds for the training being routed exclusively to the Defendant for the Defendant's sole economic benefit;

h.   Creating an unreasonable new barrier for new incoming licensees by charging new licensees for temporary use of photographs;

i.   Threatening the Company's pharmaceutical sub-contractor's license resulting in her resignation and thus hindering the ability of the Company to provide licensees with the capability to compound necessary pharmaceutical products;

j.   Rejecting attractive investment opportunities which have repeatedly presented themselves; and,

k.   Refusing to engage in conversations with the Plaintiff which are required to advance the Company's business while simultaneously engaging in a repeated course of threatening, harassing and accusatory email correspondence exchanges.

38.     In addition, the Defendant has undertaken a number of actions which evidence his breach and/or his intent to breach including his intent to misappropriate Company clients and business opportunities for his own economic benefit, including but not limited to:

a.  Pursuing additional offices for Defendant's own personal benefit under his Loria Medical brand name in violation of the Agreement; and,

b.  Soliciting current licensees to join Defendant in the opening up new offices under his Loria Medical brand name.

39.     Loria's obstructive actions have not only resulted in the loss of Company revenue due to licensees' inability to perform the medical procedure, but has also resulted in the loss of invaluable patent time and has thwarted the ability of the Company to demonstrate proof of concept necessary to attract potential investors and/or purchasers of the Company.

## CLAIMS FOR RELIEF

### AS AND FOR A FIRST CAUSE OF ACTION
*Breach of Contract*

40.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "39" with the same force and effect as if fully set forth herein at length.

41.     As described above, Plaintiff and Defendant entered into a binding written contract in the form the Agreement.

42.     That Agreement set forth terms, obligations and covenants binding the Members of the Company.

43.     As detailed herein, Defendant has taken a series of actions which violate the terms, obligations and covenants of the Agreement, including but not limited to impeding and interfering with the Company's businesses operations, refusing to fulfill his duties and obligations as Chief Medical Officer and hindering the ability of the Company to provide licensees with the ability to

compound the necessary pharmaceuticals to perform the medical procedures pursuant to their respective licensee agreements.

44.     Defendant has also breached the Agreement by pursuing commercial ventures relating to the opening of multiple medical offices in violation of Paragraph 17.1 (b) and (c) as detailed within the Second Amendment.

45.     By reason of the Defendant's breach of the Agreement and Plaintiff's determinantal reliance on the same, the plaintiff has suffered pecuniary loss.

46.     As a direct result of Defendant's improper conduct and actions, Plaintiff has suffered and will continue to suffer injury and harm in an amount to be determined at trial, and requests a judgment of no less than $30,000,000 in compensatory damages; the costs and disbursements of this action, including reasonable attorneys' fees; all relevant interest; and any such other relief to Plaintiff as this Court deems just and proper.

## AND AS AND FOR A SECOND CAUSE OF ACTION
*Breach of Fiduciary Duty*

47.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "45" with the same force and effect as if fully set forth herein at length.

48.     Plaintiff and Defendant are co-owners of the Company pursuant to the Agreement and each owe to the Company a fiduciary duty to abide by the Agreement and to act in the Company's best interest.

49.     Defendant by virtue of his continuing conduct as detailed herein has sabotaged the Company's operations, undercut the Company's ability to operate and succeed and has sought to misappropriate the Company's assets, goodwill, licensees and business relationships for his own

personal benefit in direct violation of the Agreement and his fiduciary obligations owed to the Company.

50.     Specifically, Defendant in addition to taking overt actions to thwart the Company's business operations, which is a breach of his fiduciary duty in and of itself, has furthermore breached his fiduciary duty by soliciting current existing Lorstan licensees to leave the Company so as to do business with Loria's own company which operations under the brand name Loria Medical.

51.     As a direct result of Defendant's improper conduct and actions, Plaintiff has suffered and will continue to suffer injury and harm in an amount to be determined at trial, and requests a judgment of no less than $30,000,000 in compensatory damages; the costs and disbursements of this action, including reasonable attorneys' fees; all relevant interest; and any such other relief to Plaintiff as this Court deems just and proper.

## AND AS AND FOR A THIRD CAUSE OF ACTION
*Permanent Injunctive Relief*

52.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs "1" through "50" with the same force and effect as if fully set forth herein at length.

53.     As a direct result of Defendant's improper conduct, Defendant's breach of contract, threatened breach of contract and defendant's breach of fiduciary duty, Plaintiff has suffered irreparable harm, a fact that was otherwise already stipulated to within Paragraph 19.1 of the Agreement. Accordingly, Plaintiff seeks permanent injunctive relief.

54.     Should Defendant not be enjoined from continuing to engage in his current conduct, Plaintiff and the Company stand to suffer irreparable injury, with no adequate remedy at law available.

55.     Specifically, to avoid further future irreparable harm Defendant must be enjoined from the following:

      a.  Opening new medical offices in violation of Paragraph 17.1 (b) as set forth in the Second Amendment;

      b.  Pursuing directly or indirectly, other than through the Company, any commercial ventures derived from the introduction of Dr. Loria to any person by John Stanise in violation of Paragraph 17.1 (c) as set forth in the Second Amendment;

      c.  Doing business with current Lorstan licensees or any physicians who are current potential future licensees away from the Company; and

      d.  Taking further intentional actions which hinder, delay or otherwise interfere with the business operation of the Company, including Defendant's refusal to fulfill his duties as Chief Medical Officer and/or otherwise preventing the compounding of the Company's patented pharmaceutical product by and for licensees' use.

56.     As a matter of equity and good conscience, Plaintiff is entitled to and hereby demands that the Court permanently enjoin and restrain Loria from opening new offices which purport to purvey any product which is Company product under the Agreement under the Loria Medical brand name, and further enjoin and restrain the Defendant from soliciting any of the Company's current licensees, investors or customers to otherwise partner with or purchase Lorstan products or services from Loria Medical and any such other relief to Plaintiff as this Court deems just and proper.

Dated:  New York, New York
        April 2, 2020

                                        /s/ Neal Brickman_____
                                        The Law Offices of Neal Brickman, P.C.
                                        Neal Brickman, Esq.
                                        Jason A. Stewart, Esq.
                                        *Attorneys for Plaintiff*
                                        420 Lexington Avenue - Suite 2440
                                        New York, New York 10170
                                        (212) 986-6840
                                        (212) 986-7691