Robert A. Magnanini
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel: (973) 218-1111
Fax: (973) 218-1106
*Attorneys for Defendant-Movant Victor Loria, D.O.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN STANISE,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR LORIA,<br><br>Defendant. | Civil Action No. 20-cv-2769 |

**DEFENDANT-MOVANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR TEMPORARY RESTRAINTS AND A PRELIMINARY INJUNCTION AGAINST PLAINTIFF JOHN STANISE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii
PRELIMINARY STATEMENT ..... 1
STATEMENT OF FACTS ..... 2
A. Stanise's Wrongful Attempt to Remove Dr. Loria from Lorstan's Compounding Process ..... 4
B. Stanise's Wrongful Attempt to Block Dr. Loria from Re-Opening his Temporarily Closed New York Office. ..... 7
C. Stanise's Wrongful Attempt to Block Dr. Loria from Opening, as a Lorstan Licensee Physician, other Loria Medical Locations ..... 9
LEGAL ARGUMENT ..... 10
I. Legal Standard for Injunctive Relief ..... 10
II. Movant Dr. Loria Satisfies the Requirements for Entry of a Temporary Restraining Order and Preliminary Injunction Against Plaintiff John Stanise. ..... 11
A. Dr. Loria has Demonstrated a Likelihood of Success on the Merits ..... 11
B. Dr. Loria has Demonstrated Irreparable Injury ..... 14
C. The Balance of Hardships Tips in Dr. Loria's favor ..... 15
D. The Public Interest Weighs in Favor of Granting Injunctive Relief ..... 15
CONCLUSION ..... 16

**TABLE OF AUTHORITIES**

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
784 F.3d 887 (2d Cir. 2015) .................................................................... 10, 11

*BigStar Entm't, Inc. v. Next Big Star, Inc.*,
105 F. Supp. 2d 185 (S.D.N.Y. 2000) ........................................................ 11

*Echo Design Grp. v. Zino Davidoff S.A.*,
283 F. Supp. 2d 963 (S.D.N.Y. 2003) ........................................................ 10

*Shapiro v. Cadman Towers, Inc.*,
51 F.3d 328 (2d Cir. 1995) ........................................................................ 14

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
840 A.2d 606 (Del. 2003) ........................................................................... 12

Defendant, Victor Loria, D.O. ("Dr. Loria" or "Movant") respectfully submits this memorandum of law in support of his Motion for Temporary Restraints and a Preliminary Injunction against Plaintiff John Stanise ("Stanise").

**PRELIMINARY STATEMENT**

This is a matter involving a business dispute between the owners of Lorstan Pharmaceutical LLC ("Lorstan") over the future and direction of the company. Lorstan's majority owner, Movant Dr. Loria, seeks the following relief during the pendency of Plaintiff Stanise's lawsuit: (1) that Dr. Loria be allowed to continue to function as the Chief Medical Officer ("CMO") of the company without Stanise's interference so as to ensure appropriate medical oversight over the company's compounding labs; (2) that Dr. Loria be allowed to re-open his temporarily closed New York medical office; (3) that Dr. Loria be allowed to open additional office locations whereby he will act as a Lorstan-licensee physician and pay Lorstan for access to Lorstan's Patented Silicone Product (which Dr. Loria personally invented); and (4) that Stanise and the other employees of Lorstan, of which Loria pays 70% of their salaries, continue to perform the duties they voluntarily contracted for and are paid to perform.

If Dr. Loria's requested injunctive relief is granted, the status quo will be maintained during the course of the litigation and Stanise will be (a) protected from himself, and (b) put in a better financial position. Allowing Dr. Loria to operate as CMO as per Lorstan's Amended Operating Agreement will ensure that Stanise – an accountant – does not cause patient harm and expose Lorstan to possible lawsuits. Moreover, by allowing Dr. Loria to become a Lorstan licensee-physician, he will purchase product from Lorstan resulting in enhanced income for Stanise. On the other hand, if injunctive

relief is not granted and Lorstan is allowed to re-start its compound labs without Dr. Loria's oversight, besides harm to patients, Dr. Loria's medical license and reputation in the medical community will be put at substantial risk.  And if Dr. Loria is not allowed to operate his separate business, Loria Medical, as he deems appropriate, he risks financial ruin, especially in this time of COVID-19.

Accordingly, for the reasons set forth below, Dr. Loria is requesting the entry of a TRO and preliminary injunction during the pendency of this litigation to allow him to operate unfettered as Lorstan's CMO, require Stanise and other Lorstan employees to perform the work they contracted to and are paid to do,  and to prevent Stanise from unfairly blocking the expansion of Dr. Loria's separate business, Loria Medical, which will increase the revenues of Lorstan.

## STATEMENT OF FACTS

Dr. Loria is the majority owner (70%) and CMO of Lorstan, a Delaware limited liability company with its principal office in Florida.  Declaration of Dr. Victor Loria ("Loria Dec.") at ¶ 5.  Florida is also where Dr. Loria resides.  *Id.*  Dr. Loria is a licensed cosmetic dermatologist and surgeon, and also owns and operate a separate, non-affiliated medical practice ("Loria Medical") in Miami, Florida.  *Id.*

In Dr. Loria's capacity as the CMO of Lorstan, and the only licensed physician on staff, it is his responsibility to ensure that Lorstan's medical operations follow all applicable federal, state and local laws and regulations.  *Id.* at ¶ 6.  In sum, all medical-related decisions are within his purview – in the end it is Dr. Loria's medical license that is at stake if something goes wrong and if patient harm results.  *Id.*

Stanise, the minority owner (30%) of Lorstan and its Chief Executive Officer ("CEO") is a Certified Public Accountant with no medical training or experience. *Id.* at ¶ 7. As CEO, Stanise's purview is the business-side of Lorstan's operations, ensuring the company is meeting its financial obligations and obtaining the necessary funding to maintain the company as a going-concern. *Id.*

Lorstan was formed in 2016 to undertake the for-profit development, licensing, exploitation and commercialization of a pharmaceutical compound identified as a silicone oil based compound, or its derivatives, and the pending and existing patents which include but are not limited to U.S. Patent Number 9,993,578 B1 (June 12, 2018) (the "Patented Silicone Product"). *Id.* at ¶ 8 (*see* patent at Ex. A to Loria Dec.). Dr. Loria is the sole inventor of the Patented Silicone Product, and he assigned his rights in the patent to Lorstan, as part of his contributions to creating Lorstan. *Id.* at ¶ 9. Lorstan's business model is simple. Dr. Loria trains physicians on how to use the Patented Silicone Product for certain medical injection procedures, and they become licensees of Lorstan. *Id.* at ¶ 10. Under their license agreements, these licensee-physicians are entitled to purchase and use Lorstan's Patented Silicone Product for medical injection procedures performed in their own practices. *Id.* In order to manufacture the Patented Silicone Product, Lorstan owns and operates compound laboratories in Florida, Georgia, Texas, and California which, through the use of a compound pharmacist, manufacture the Patented Silicone Product for distribution to Lorstan-licensee physicians. *Id.* at ¶ 11.

As the majority owner, CMO, and only licensed physician on Lorstan's staff, Dr. Loria is legally responsible for ensuring that Lorstan's compounding facilities meet applicable federal, state and local standards. *Id.* at ¶ 12. Failure to meet those standards

could result in patient harm, which would be disastrous both for Lorstan and for Dr. Loria individually as a licensed physician. *Id.* As a medical doctor and the inventor of the Patented Silicone Product, Dr. Loria is best suited to overseeing and ensuring that Lorstan's compounding operations are meeting necessary state and federal standards, and are in keeping with the highest levels of patient care. *Id.* at ¶ 15.

### ***A. Stanise's Wrongful Attempt to Remove Dr. Loria from Lorstan's Compounding Process.***

Initially, Stanise respected Dr. Loria's role as CMO, majority owner, and inventor of the Patented Silicone Product. *Id.* at ¶ 13. Dr. Loria spent countless hours teaching Stanise and Lorstan's staff how to build a compliant compounding laboratory, and also teaching Lorstan's compounding pharmacist how to compound the patented formula. *Id.* In addition, Dr. Loria started training other Lorstan-licensee physicians in his technique and the use of the Patented Silicone Product. *Id.* During this time, Stanise did not interfere with Dr. Loria's ability to act as Lorstan's CMO, nor did he interfere with Dr. Loria's communications with Lorstan staff and its compounding pharmacist, Dr. Loria's access to our labs, or Dr. Loria's access to Lorstan's books and records. *Id.* Rather, as CEO, Stanise instead focused on the financial side of Lorstan's operations, including the company's accounting, corporate development, the physical construction of Lorstan's laboratories and attempted raising of capital. *Id.*

Stanise, the accountant-turned-CEO who is a minority owner of Lorstan, is seeking to wrest complete control from Dr. Loria of both Lorstan (which Dr. Loria own 70% of) and its compounding operations – for which Dr. Loria is personally responsible as the CMO and only licensed physician on Lorstan's staff. *Id.* at ¶ 14. Stanise's efforts to remove Dr. Loria from Lorstan's compounding operations have reached a fever pitch.

Specifically, Dr. Loria has been locked out of Lorstan's various compounding labs, and Lorstan's compounding pharmacist Erin Kutka has been instructed by Stanise not to speak with Dr. Loria (this, despite the fact that Dr. Loria taught her to compound the Patented Silicone Product, is her supervisor and pays 70% of her salary). *Id.* at ¶ 16.

Lorstan's compounding pharmacist has made several comments to Dr. Loria over the course of the last few months that have led him to believe that she is incapable of performing her duties without his assistance and oversight, which cannot be provided by Stanise, and which Dr. Loria being blocked from providing. *Id.* at ¶ 17. For example, Dr. Loria's assistance and guidance is vital to Lorstan's efforts to adjust the formula compound to optimize clinical outcomes. *Id.* Ms. Kutka has little experience or know-how regarding the clinical aspect of Lorstan's Patented Silicone Product: she does not know what this formula does to the patient's skin, how it looks, feels, cosmetic outcomes and other related issues. *Id.* These clinical observations may result in necessary changes to the formula to improve patients' clinical results – input that only Dr. Loria can provide. *Id.*

Specifically, on one recent occasion, Lorstan's compounding pharmacist Ms. Kutka told Dr. Loria that she needed to create practice batches of the Patented Silicone Product because she only had two courses of training and was concerned with her own ability to ensure patient safety. *Id.* at ¶ 18. This does not inspire confidence, and at worse can injure patients, lead to lawsuits against Dr. Loria and jeopardize his license. *Id.* at 19. Patients' health is at stake – as is Dr. Loria's medical license as the CMO of Lorstan. *Id.* Dr. Loria must be allowed to ensure that our company's medical operations

are performing in accordance with all state and federal regulations and necessary medical standards. *Id.*

When confronted regarding these issues, Stanise has told Dr. Loria, effectively, that his services are no longer required as CMO. *Id.* at ¶ 20. Stanise claims that Lorstan's compounding labs can operate without a licensed physician overseeing them, without a CMO, and without the inventor of the very patented product that they are compounding. *Id.* Furthermore, Stanise informed Dr. Loria on April 23, 2020, that he intends to modify or change both the ingredients in the Patented Silicone Product and the method by which it is compounded. *Id.* at ¶ 21. Dr. Loria will be irreparably harmed if Stanise changes either the patented formula or the process and patient harm occurs as Dr. Loria will be held responsible for it. *Id.*

Stanise is not medically trained. *Id.* at ¶ 22. Stanise is the minority owner of a company that owns the rights to a patented product that Dr. Loria created. *Id.* Stanise has no ability, under Lorstan's Amended Operating Agreement (Dkt. No. 1, Doc. 1-1) to remove Dr. Loria as Lorstan's CMO or lock Dr. Loria out of the company's facilities and cut Dr. Loria off from Lorstan's books and records. *Id.* Indeed, on April 7, 2020, Stanise refused to provide Dr. Loria with a set of keys for Lorstan's compounding labs despite his role as CMO and majority owner, claiming a false concern that Dr. Loria would steal medical supplies or cause damage to the labs. *Id.*

Stanise has no right, contractual or otherwise, to bar Lorstan's compounding pharmacist – who reports to Dr. Loria in his capacity as CMO and majority owner of Lorstan – from speaking with Dr. Loria. *Id.* at ¶ 23. Stanise is putting Lorstan's reputation, and the company itself, at risk, and patient health in peril. *Id.*

Stanise has threatened that after the COVID-19 related shutdown, he intends to re-open all of the Lorstan compounding labs – without Dr. Loria's oversight as CMO – and restart the sale of Dr. Loria's Patented Silicone Product over Dr. Loria's objections. *Id.* at ¶ 24. Dr. Loria fears the potential impact that this could have on Lorstan, Lorstan's licensee-physicians using the product, their patients, and Dr. Loria's medical license. *Id.*

***B. Stanise's Wrongful Attempt to Block Dr. Loria from Re-Opening his Temporarily Closed New York Office.***

Dr. Loria currently earns no income from Lorstan due to Stanise's failure to raise funds for the company in his capacity as CEO. *Id.* at ¶ 27. Instead, Dr. Loria foots 70% of the costs of Lorstan's operations – including Stanise's salary as CEO. *Id.* In order to make a living, Dr. Loria continues to operate a separate medical practice, Loria Medical. *Id.* at ¶ 28. Loria Medical currently operates one medical office in Miami, Florida, close to where Dr. Loria resides. *Id.*

Formerly, in 2014, Dr. Loria opened a Loria Medical office in New York. *Id.* at ¶ 29. This Loria Medical location pre-dates Lorstan, which was formed in 2016. *Id.* Loria Medical's New York office closed in 2018, but the entity and licensing remains active. *Id.* Dr. Loria could re-open the Loria Medical New York office in approximately sixty days. *Id.*

At the Loria Medical New York location, and before and after the creation of Lorstan, as the inventor of the Patented Silicone Product and a licensed physician, Dr. Loria compounded the product himself for Loria Medical's use on his own patients. *Id.* at ¶ 30. Stanise was aware of this and had no objection to Dr. Loria's self-compounding at the New York location. *Id.* Dr. Loria follows that same self-compounding process at

his current Loria Medical location in Miami, Florida.  *Id.* at ¶ 31.  Stanise is aware of this and has no objection to Dr. Loria's self-compounding at the Miami location.  *Id.*

Stanise, however, is now blocking Dr. Loria from re-opening his Loria Medical office in New York, as he claims it could have a potential negative impact on Lorstan.  *Id.* at ¶ 32.  His claims are unfounded, as Lorstan has no licensee-physicians located in the State of New York.  *Id.*  Moreover, as New York City alone has a population of 9 million people, surely there would be enough room in the New York Metropolitan area for other Lorstan licensee-physicians?  *Id.*

Moreover, Stanise has no right under the Lorstan Operating Agreement to prevent Dr. Loria from making a living or re-opening his New York office.  *Id.* at ¶ 33.  To the extent he objects to Dr. Loria self-compounding for the New York location, his objections are without merit – Dr. Loria already does this at his Miami location with Stanise's consent and Loria Medical's New York location pre-dated the creation of Lorstan and operated as a self-compounding facility for two years after Lorstan was in business.  *Id.*  If Stanise objected to this practice, he should have made those objections known in 2016 when Lorstan was created.  *Id.*

Stanise premises his objection to Dr. Loria's re-opening of the Loria Medical New York location and self-compounding his own Patented Silicone Product for his own professional use at Loria Medical New York on the 2018 amendment to Lorstan's Operating Agreement  (Dkt. No. 1, Doc. 1-2), at Paragraph 17.1(b): "Dr. Victor Loria shall not pursue, directly or indirectly, other than through Company or a management company which is a subsidiary of Company, any commercial ventures relating to the opening of multiple medical offices."  Loria Dec. at ¶ 34.

However, Dr. Loria is not seeking to open "multiple medical offices" with self-compounding facilities outside of Lorstan's purview – Dr. Loria is simply seeking to re-open an office that pre-dated the creation of Lorstan and which operated as a going concern until 2018. *Id.* at ¶ 35. Stanise is using the 2018 Amendment to the Lorstan Operating Agreement as a weapon – hoping that the financial pressure caused by Dr. Loria only being allowed to operate the Miami facility will result in Dr. Loria caving to Stanise's desires and effectively turning over complete control of Lorstan to him, its minority owner. *Id.* at ¶ 37.

***C. Stanise's Wrongful Attempt to Block Dr. Loria from Opening, as a Lorstan Licensee Physician, other Loria Medical Locations.***

In addition to Dr. Loria's current Miami Loria Medical location – where he is indisputably allowed to self-compound the Patented Silicone Product for Loria Medical's use, and Loria Medical's New York location which Dr. Loria seeks to re-open as another self-compounding Loria Medical facility, Dr. Loria also wants to open multiple Lorstan-licensee Loria Medical locations that will purchase the Patented Silicone Product from Lorstan – just like any other Lorstan-licensee physician. *Id.* at ¶ 39.

Paragraph 17.1(b) of the Lorstan Amended Operating Agreement allows Dr. Loria to open medical facilities that act as Lorstan-licensees and which pay Lorstan for access to Lorstan-compounded Patented Silicone Product: "Dr. Victor Loria shall not pursue, directly or indirectly, other than through Company or a management company which is a subsidiary of Company, any commercial ventures relating to the opening of multiple medical offices." *Id.* at ¶ 40. By opening and making these other Loria Medical facilities (outside of New York and Miami) regular Lorstan-licensee facilities that pay Lorstan for access to Lorstan-compounded Patented Silicone Product, Dr. Loria is seeking to use his

contractual right to "pursue commercial ventures relating to the opening of multiple medical offices . . . through Company" – the very purpose Lorstan was created for. *Id.* at ¶ 41.

To be clear, Dr. Loria is not seeking to make these other non-New York/Miami Loria Medical facilities self-compounding sites. *Id.* at ¶ 42. He wants to pay Lorstan as a licensee-physician for Lorstan's company-compounded Patented Silicone Product. As the majority owner of Lorstan, Dr. Loria is only seeking the same access to Lorstan's product as other non-owner licensees. *Id.*

## LEGAL ARGUMENT

### I. Legal Standard for Injunctive Relief.

To obtain a preliminary injunction, a moving party must show: (1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the [movant's] favor"; and (4) that the "public interest would not be disserved." *See Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015) (internal citations omitted). The temporary restraining order standard is the same. *See, e.g., Echo Design Grp. v. Zino Davidoff S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003).

## II. Movant Dr. Loria Satisfies the Requirements for Entry of a Temporary Restraining Order and Preliminary Injunction Against Plaintiff John Stanise.

### *A. Dr. Loria has Demonstrated a Likelihood of Success on the Merits.*

To establish a likelihood of success on the merits, a movant "need not show that success is certain, only that the probability of prevailing is 'better than fifty percent'". *BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). While Dr. Loria surpasses this standard, he can also certainly satisfy the alternative test of "sufficiently serious questions going to the merits to make them a fair ground for litigation" given that the balance of hardships stemming from any limited and temporary relief tips decidedly in his favor. *See Benihana*, 784 F.3d at 894-95 (internal citations omitted).

Dr. Loria seeks injunctive relief as to four issues, set forth at length in his Declaration: (1) a TRO and preliminary injunction preventing Stanise, during the pendency of this litigation, from locking Dr. Loria – the CMO and majority owner of Lorstan – out from Lorstan's medical operations, particularly its compounding labs; (2) a TRO and preliminary injunction preventing Stanise from blocking Dr. Loria's re-opening of his temporarily closed Loria Medical New York facility; (3) a TRO and preliminary injunction preventing Stanise from blocking Dr. Loria from becoming a Lorstan licensee-physician and opening additional licensee locations outside of Miami and New York; and (4) a TRO and preliminary injunction requiring Stanise and Lorstan's employees to continue to perform their business functions and work with Dr. Loria as they did prior to the dispute with Stanise

Each of these issues raised in Dr. Loria's Declaration sound in breach of contract – Dr. Loria's contention is that Stanise is actively breaching the Lorstan Amended Operating Agreement by interfering with Dr. Loria's role as Lorstan's CMO, failing to perform their duties under the Operating Agreement and employment agreements and blocking Dr. Loria's expansion of Loria Medical. To establish a *prima facie* case of breach of contract under Delaware law, which governs the parties' agreement, a movant must demonstrate (1) a contract existed, (2) a party materially breached an obligation imposed by that contract, and (3) the breach damaged the other party. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

It is without dispute that the Lorstan Amended Operating Agreement is a binding contract between the parties. As set forth in his Declaration, Dr. Loria has performed in accordance with the parties' agreement by assigning his patent rights to Lorstan, funding 70% of Lorstan's operations, training licensee-physicians on the Lorstan product and methodology, and serving as CMO for the Lorstan compounding labs. For purposes of this motion, Stanise has failed to perform under the Lorstan Amended Operating Agreement by, among other things: locking out Lorstan's CMO from oversight over the company's medical operations; improperly attempting to re-start Lorstan's compounding labs without Dr. Loria having access or oversight over same; blocking Dr. Loria from re-opening his temporarily shuttered Loria Medical facility in New York, which predates Lorstan; and blocking Dr. Loria from becoming a Lorstan licensee-physician in regions outside of Miami and New York. While Stanise has failed in his role as CEO in countless other ways, the above represent his most crucial breaches of the parties' agreement for purposes of the injunctive relief currently sought by movant.

Moreover, as discussed at length in his Declaration, Dr. Loria's potential damages could be serious. For one, if Lorstan is allowed to compound Dr. Loria's Patented Silicone Product without proper medical oversight, patient harm could result. This would expose Lorstan and Dr. Loria to possible lawsuit, and put Dr. Loria's reputation and medical license at risk since he remains CMO of Lorstan. These are not far-fetched allegations – indeed Lorstan's chief compounding pharmacist has clearly stated to Dr. Loria her lack of comfort with the compounding process without his oversight. *See* Loria Dec., ¶ 18. Furthermore, Stanise's attempts to modify the either the Product's ingredients or manufacturing process could violate the patent, cause extensive patient harm, and subject to Dr. Loria to risks to his medical license, his reputation and untold potential litigation.

Moreover, Dr. Loria – who pays 70% of Lorstan's expenses and reaps no income from the company – needs to make a living. Loria Medical is currently confined to one office in Miami. Stanise is using the Lorstan Amended Operating Agreement in an attempt to squeeze more money and equity out of Dr. Loria by blocking his re-opening of Loria Medical's New York office, and by preventing Dr. Loria from becoming a licensee-physician for Lorstan at other locations, which would directly benefit Lorstan's bottom line. However, Dr. Loria's New York office pre-dated Lorstan's creation and operated for two years (until 2018) with Stanise's full consent following the 2016 creation of Lorstan. Loria Medical New York remains an active entity and could be easily re-opened within 60 days. Lorstan, meanwhile, has no licensee physicians in New York – Dr. Loria will not be competing with Lorstan (the Company that, by the way, he founded, owns 70% of, and exists because of his patent he assigned to the Company).

Nor is there any rationale for preventing Dr. Loria from – like any other licensee-physician – paying Lorstan for access to Lorstan's compounded Patented Silicone Product to be used at Loria Medical facilities outside of New York and Miami. Indeed, this would benefit Lorstan and Stanise by increasing Lorstan's revenue flow. But Stanise blocks these efforts as a bald attempt at leveraging Dr. Loria's livelihood against him. Thus, Dr. Loria has a compelling case for a multitude of damages that he will suffer (and his likely success on the merits) in the event that Stanise' behavior goes unchecked.

***B. Dr. Loria has Demonstrated Irreparable Injury.***

To demonstrate irreparable harm, a plaintiff must show an injury that is "actual and imminent" and "cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (citation and internal quotation marks omitted). As discussed above, if patient harm results from the lack of oversight that will occur as a result of Dr. Loria's lock-out when Lorstan's compounding labs restart production following their COVID-19 related shutdown, Dr. Loria may be exposed to lawsuits from both Lorstan licensee-physicians and injured patients, as well as potential regulatory discipline related to changes in the ingredients or the compounding process of the Patented Silicone Product under the supervision of Stanise, who is medically unqualified to supervise the production of same. Dr. Loria could lose his medical license, and have his reputation in the medical community destroyed. These issues cannot be resolved by mere monetary damages. The public health should not be put at risk by Stanise's refusal to allow proper medical oversight of Lorstan's compounding operations.

Moreover, in regards to Stanise blocking the re-opening of Loria Medical in New York, and the opening of Lorstan-licensee Loria Medical facilities elsewhere, Dr. Loria needs to be allowed to earn wages and make a living. With the COVID-19 related economic slowdown, medical procedures such as those offered by Loria Medical are in decreased demand. If Dr. Loria is not allowed to grow Loria Medical, while at the same time being expected to pay 70% of Lorstan's operating costs, he risks financial ruin.

***C. The Balance of Hardships Tips in Dr. Loria's favor.***

If Stanise is not stopped, Dr. Loria risks losing his medical license, his reputation in the medical community, and his livelihood. Meanwhile, all Stanise is being asked to do is to: (1) allow his business partner to properly execute his role as CMO of Lorstan; (2) allow his business partner to re-open his New York office that was temporarily shuttered; (3) allow his business partner to become a Lorstan-licensee physician and pay Lorstan licensing fees for the use of Lorstan-compounded Patented Silicone Product; and (4) perform the jobs he contracted to do. If the injunctions are entered, Stanise stands to make money – not lose it, and the status quo will remain unchanged during the pendency of the litigation.

***D. The Public Interest Weighs in Favor of Granting Injunctive Relief***

The public interest clearly weights in favor of immediately halting Stanise's efforts to move forward with Lorstan's compounding operations without proper medical oversight, i.e. without the guidance and review of Dr. Loria (the company's CMO). Patient harm from improper compounding methods could result without Dr. Loria's oversight. The public interest weighs in favor of protecting the public health as opposed to lining Stanise's pockets.

In regards to the re-opening of Loria Medical New York, and the opening of Loria Medical Lorstan-licensee locations elsewhere, in a time of economic contraction it is surely in the public interest that a small businessman be allowed to open multiple offices that will employ dozens of individuals while the parties dispute the merits of this case.

**CONCLUSION**

Based on the foregoing, Movant Victor Loria, D.O., respectfully requests that his motion for the entry of (1) a temporary restraining order pending the resolution of the motion for a preliminary injunction, and, (2) a preliminary injunction pending the resolution on the merits of the present action be granted.

Respectfully submitted,

Dated: May 4, 2020

*s/Robert A. Magnanini*
Robert A. Magnanini
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Rmagnanini@stonemagnalaw.com
Tel: (973) 218-1111
Fax: (973) 218-1106
*Attorneys for Movant Victor Loria, D.O.*