**UNITED STATES DISTRCIT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------X
JOHN STANISE,                         :
                                      :
                Plaintiff(s),         :
                                      :
       v.                             :
                                      :
VICTOR LORIA,                         :
                                      :
                Defendant(s).         :
-------------------------------------------------X
```

**Case No.: 1:20-CV-02769-VSB**

**PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S
MOTION FOR A TEMPORARY RESTRAINING ORDER**

The Law Offices of Neal Brickman, P.C.
Neal Brickman, Esq.
Jason Stewart, Esq.
*Attorneys for Plaintiff John Stanise*
420 Lexington Avenue, Suite 2440
New York, New York 10170
Tel: (212) 986-6840
Fax: (212) 986-7691
Neal@Brickmanlaw.com
Jason@Brickmanlaw.com

## TABLE OF CONTENTS

**PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION FOR A TRO**

PRELIMINARY STATEMENT……………………………………………….... 1

FACTUAL BACKGROUND………………………………………………… 2

ARGUMENT………………………………………………………………….. 9

    I.      DEFENDANT HAS NOT MET THE EXTRAORDINARY BURDEN REQUIRED TO OBTAIN A PRELIMINARY INJUNCTION…………………………………………………… 9

        A.  Defendant Has Not Shown a "Clear" or "Substantial" Likelihood of Success on the Merits…………………… 9

            1.  Defendant's Claim That He Has Been "Locked Out" From Oversight Over The Company's Medical Operations, Particularly, Its Compounding Labs is Untrue and is Offered as a Pre-Textual Basis for Loria to Gain Full Control of Lorstan ……... 10

            2.  Defendant's Request for Expedited Relief Asking the Court to Allow Him to Open a New York Medical Facility………………………………… 11

            3.  Defendant's Request For Injunctive Relief Requiring Stanise And Lorstan Employees To Perform Their Business Functions And Work With Dr. Loria As They Did Prior To This Dispute……………….. 12

        B.  Defendant Has Not Shown a Likelihood of Irreparable Harm…………………………………………………. 13

        C.  The Balance of Equities Tips Decidedly in Plaintiff's Favor…………………………………………………. 16

        D.  The Public Interest is Not Served by Granting Defendant's Motion……………………………………………... 17

CONCLUSION………………………………………………………………... 18

## **TABLE OF AUTHORITIES**

**Cases:**

*Abdul Wali v. Coughlin*,
    754 F.2d 1015, 1025 (2d Cir. 1985)…………………………………………….....   10

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
    784 F.3d 887, 895 (2d Cir. 2015)…………………………………………….....   9, 18

*Borey v. Nat'l Union Fire Ins. Co.*,
    934 F.2d 30, 34 (2d Cir. 1995)…………………………………………….....   15

*Jayaraj v. Scappini*,
    66 F.3d 36, 39 (2dCir.1995)…………………………………………….....   15

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
    917 F.2d 75, 79 (2d Cir. 1990)…………………………………………….....   13, 14

*N.A.A.C.P., Inc. v. Town of East Haven*,
    70 F.3d 219, at 223 (2d Cir. 1995)…………………………………………….   2

*Reuters Ltd. V. United Press, Intern, Inc.*
    903 F.2d 904,907(2d Cir. 1990)………………………………………………   13

*Rodriguez v. DeBuono*,
    175 F.3d 227, 234 (2d Cir. 1999)…………………………………………….....   16

*Salinger v. Colting*,
    607 F.3d 68,79 (2d Cir. 2010)…………………………………………….....   9

*Shapiro v. Cadman Towers, Inc.*,
    51 F.3d 328, 332 (2d Cir. 1995)………………………………………………   14

*Sierra Club v. Hennessy,*
    695 F.2d 643, 647 (2d Cir. 1982)…………………………………………….....   14

*Somoza v. NYC Dep't of Educ.*,
    No. 06 CIV. 5025 (VM), 2006 WL 1981758,
    at *3 (S.D.N.Y. July 10, 2006)…………………………………………….....   9

*Sweeney v. Bane,*
    996 F.2d 1384, 1387 (2d Cir. 1993)…………………………………………….....   14

*Tom Doherty Associates, Inc. v. Saban Entm't, Inc.*,
    60 F.3d 27, 34 (2d Cir. 1995)………………………………………………   9, 10

**Statutes:**

Fed.R.Civ.P. 65(a)……………………………………………………………………..    2, 9

Plaintiff, John Stanise (hereinafter "Stanise") by and through his undersigned counsel, respectfully submits this Memorandum of Law in Opposition to the Motion for a Temporary Restraining Order and Preliminary Injunction (the "Motion") filed by Defendant, Victor Loria (hereinafter, "Defendant" or "Loria").

## PRELIMINARY STATEMENT

Defendant's Motion for a Temporary Restraining Order and Preliminary Injunction is entirely without merit. It is premised on a completely inaccurate factual narrative, a selective and misleading recitation of the provisions of the Company's Operating Agreement, and a misstatement of the applicable law. It is an impermissible invocation of the old adage that "the best defense is a good offense." Defendant's motion is simply the latest act by an unfaithful fiduciary intended to destroy the Company he co-owns with Plaintiff for the purpose of furthering his own personal pecuniary interests. Defendant cannot show that he has a likelihood of success on the merits or that he has, or will, suffer irreparable harm. In fact, the exact opposite is true: Plaintiff, not Defendant, is likely to prevail on the merits of his claims and Plaintiff, not Defendant, has, and will, suffer irreparable harm. Armed with the benefit of a complete and accurate factual record, this Court should deny Defendant's motion for injunctive relief and, instead, grant Plaintiff injunctive relief, preventing the Defendant from destroying the Company.

In response to the Complaint filed by the Plaintiff, arising out of Defendant's breach of the Operating Agreement, which sets forth the rights and obligations of the parties with respect to the company they jointly own, Lorstan Pharmaceutical, LLC, ("Lorstan" or the "Company"), Defendant has filed not one, but two frivolous motions. In the present motion, Defendant seeks injunctive relief asking the court to mandate action, that is, order the Plaintiff to (1) not hold

1

defendant to the terms of the Operating Agreement and (2 ) to  not fulfill his fiduciary and contractual duties owed to the Company.

Defendant's motion falls far short of demonstrating the necessary requirements to be entitled to the extraordinary relief sought under the controlling facts, the governing law, and the terms of the agreement. First, the motion is based on Defendant's false recitation of facts and conclusory assertions based on that false premise. Moreover, laid bare, the motion is nothing more than a conclusory recitation of the standards for the consideration of a motion for a preliminary injunction under Fed.R.Civ.P. 65(a), failing to set forth anything in evidentiary form that establishes that the defendant will suffer irreparable harm or either "(a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." *N.A.A.C.P., Inc. v. Town of East Haven,* 70 F.3d 219, at 223 (2d Cir. 1995). Defendant cannot meet the heavy burden necessary to obtain injunctive relief. For these and other reasons set forth below, the Court must deny Defendant's application. Defendant's improper attempts to prevent Lorstan from operating must be stopped.

## FACTUAL BACKGROUND

Mr. Stanise is a Certified Public Accountant and is the Chief Executive Officer ("CEO"), as well as a 30% equity member, of Lorstan, sharing full operational control with his Partner, Loria. Stanise Decl. ¶ 5. The remaining membership units of the Company are held and controlled by Loria, a licensed cosmetic dermatologist. Stanise Decl. ¶ 5. Loria maintains a private medical practice, Loria Medical, in Miami, Florida. Stanise Decl. ¶ 5. The Company was formed in or about May 19, 2016, with Stanise and Loria simultaneously entering into an Operating Agreement

2

(the "Agreement"), which set forth the terms upon which the Company would be operated. Stanise Decl. ¶ 6.

Contrary to Defendant's mischaracterization of the Company's business model, Lorstan is not in the business of manufacturing or selling pharmaceutical products. Rather, Lorstan licenses medical technology to licensee physicians to allow Lorstan licensees to compound Lorstan's Patented Silicone Product (the "Product") under the auspices of the licensees' own medical licenses, in accordance with a Lorstan Licensee Agreement. Stanise Decl. ¶ 10. Lorstan, by and through, its licensed and specially trained pharmacist, operates four labs—in California, Texas, Georgia, and Florida (still under construction)—within which the licensee doctors compound the Product by retaining a Lorstan's trained pharmacist. Stanise Decl. ¶ 10. Lorstan is paid a per dosage fee each time a licensee physician compounds pursuant to the Lorstan Licensing Agreement. Lorstan does not sell, nor is it allowed under the law to sell, pharmaceutical products. Stanise Decl. ⁋ 12. The Lorstan Licensee Agreement contains hold harmless language that indemnifies Lorstan and the Defendant for any potential harm arising from the licensee physicians' conduct, or the use of pharmaceuticals compounded by those licensee doctors, pursuant to the Lorstan Licensee Agreement. Therefore, any claim by Loria concerning his potential legal exposure is a knowingly feigned concern. Stanise Decl. ⁋ 13. Loria also feigns concern for patient safety. This is just another false narrative posited to mislead the Court.

The business of Lorstan requires neither Lorstan, the Plaintiff, nor the Defendant to compound pharmaceuticals. Rather, the Lorstan business model provides for a licensed pharmacist, who has been trained by the Defendant, to sub-contract with Lorstan licensee physicians and for that pharmacist to compound Lorstan's patented Product under the auspices of the licensee physician and his medical license. Stanise Decl. ⁋ 14. The compounding is performed

3

by a licensed pharmacist within sterilized labs made available to the licensee physicians by virtue of a Lab Usage Agreement. Stanise Decl. ⁋ 15. The labs used for compounding by licensee physicians under the Lab Usage Agreements, which are located in Florida, Georgia, Texas and California, are not owned by Lorstan. Rather, those labs are independently owned and held by separate entities which Plaintiff and Defendant own in the same proportions that they own Lorstan. Stanise Decl. ⁋ 16. Defendant's claims within his declaration that Lorstan owns and operates compounding labs and that Lorstan manufacturers the Patented Silicone Product is a knowing misstatement of fact. Stanise Decl. ⁋ 17.

Defendant's claim that Lorstan's ongoing operations is, in any way, dangerous or may lead to patient harm is equally unfounded and is patently untrue. So too is any claim that Lorstan has altered or changed the compounding process or the ingredients of the Product. This claim is the product of Loria's misreading of Stanise's April 23, 2020 e-mail. Loria was explicitly told that there was no change in the ingredients or procedure in an email dated April 27, 2020 and stated again in a separate email dated April 28, 2020. Stanise Decl. ⁋ 18. Defendant's contention that he is legally responsible for ensuring standards with respect to compounding facilities, methods, and techniques is also not true. Lorstan does not, and cannot, compound pharmaceuticals. Stanise Decl. ⁋ 19. It is the licensee physician and the licensed pharmacist who are legally responsible for ensuring that the compounding is done appropriately, not Lorstan or the Defendant. Stanise Decl. ¶ 20. There is also no requirement to be a licensed pharmacist to compound pharmaceutical products under the auspices of a doctor's license. Rather, the individual performing the compounding need only be a person with the skills to compound and have the reasonable confidence of the physician under whose auspices the compounding is being performed. Loria is aware of these governing laws and the applicable requirements concerning compounding, yet

misrepresents them  to the Court in an effort to promote his personal financial gain, to the detriment of the Company. Stanise Decl. ⁋ 21.

With respect to ensuring that the compounding facilities are in compliance with federal, state and local standards and regulatory requirements, Lorstan has retained independent experts to certify all labs used by licensee physicians for compounding the Lorstan product meet sterility requirements and all applicable standards. Again, Defendant has had no role or responsibility in this regard and his feigned concern over these issues must be given no credence. In fact, the Defendant has refused to participate in, or otherwise provide technical support in this regard, thus necessitating the hiring of an independent expert in the first instance. His claim that he is required, or that he is concerned, with hypothetical patients' health is a red-herring, posited only for the purpose of hindering, and potentially closing, Lorstan's business so that he can divert those business opportunities to Loria Medical, in violation of the Operating Agreement and his fiduciary duties. Stanise Decl. ⁋ 22.

There is no requirement, either in practice or in law, that a doctor must supervise a laboratory used for the purposes of compounding pharmaceuticals. Under the law, any individual can own and/or manage a pharmacy of any kind, including a compounding lab, so long as they employ qualified individuals to fulfill state law requirements. Stanise Decl. ⁋ 23.

Defendant's role in the Company is, and has always been, to serve in a limited capacity as the Company's medical resource, whereby he was required to train licensees physicians on how to use the pharmaceutical product and to provide technical advice as required regarding compounding and medical procedure matters. Stanise Decl. ⁋24.  Neither Plaintiff, nor anyone on his staff has interfered with Defendant's limited role in the Company. Stanise Decl.  ⁋ 25. To the contrary, since

5

January 2020 Loria has refused to perform these limited tasks, unless Stanise agrees to allow him to open additional Loria Medical officers in contravention of the Agreement. Stanise Decl. ⁋ 25.

There has been no effort to remove the Defendant from the "compounding operations," because the Defendant was never involved in any Lorstan compounding operations and because Lorstan does not compound--the pharmacist compounds under the auspices of the licensee physician pursuant to the Lorstan Licensee Agreement. Stanise Decl. ⁋ 26. The Defendant has not been locked out of any labs and the pharmacist trained by the Defendant to conduct compounding in accordance with Lorstan Licensee Agreements has not been instructed to "not speak with" the Defendant as is claimed in Defendant's Declaration. Stanise Decl. ⁋27. The Defendant has never had keys to any of the laboratories and has only recently sought access to the laboratory amid this dispute as a further basis to claim that he has been aggrieved. Stanise Decl. ⁋ 28. Plaintiff has refused to provide the keys because of his concern that, given the current dispute, if the Defendant is provided keys to access the laboratories directly, for which he would have no business purpose, it will result in the laboratories being damaged or sabotaged by the removal of necessary supplies. Stanise Decl. ⁋ 28. This concern was re-affirmed when Loria, without notice or justification, closed the Company's Operating bank account and emptied it of funds.

With respect to the Defendant's allegation that communication was made on April 23, 2020 to the Defendant advising that there is any intent to modify or change the ingredients in the Patented Silicone Product and the method that it is compounded, no such communication ever occurred. Stanise Decl. ⁋ 29. Rather as can be seen in the email correspondence exchange between Plaintiff and Defendant, Defendant is mischaracterizing a comment within the email made about lab sterilization prerequisites and offering further mistruths to this Court. Stanise Decl. ⁋ 29.

Defendant has sought to manufacture a conflict and develop a false narrative, while refusing to abide by the terms of the Company's Operating Agreement and refusing to serve as a medical resource, by *inter alia*, refusing to train doctors and refusing to provide technical assistance with respect to medical and pharmaceutical matters. Stanise Decl. ¶ 30.

The Defendant's conduct has strained the relationship between Lorstan and their trained pharmacist, who is not an employee of Lorstan and who is not paid a salary, despite Defendants contention to the contrary. Specifically, Defendant overtly threatened the pharmacist's professional license, leading to her temporary resignation and creating barriers for her continuing under the existing arrangement, whereby she had previously agreed to sub-contract with Lorstan Licensee physicians to perform compounding. Stanise Decl. ¶ 31.

Defendant through this motion is seeking to open additional medical offices, including one in New York, that would allow him to compete with, co-opt, or otherwise subvert potential patients away from, Lorstan licensee physicians, thereby harming Lorstan's economic interests. Stanise Decl. ¶ 30-32. Defendant has approached a number of Lorstan licensee physicians, and/or potential Lorstan licensee physicians about those physicians joining his Loria Medical Practice, in the process undermining the Lorstan business model of developing a network of licensee physicians for the purpose of furthering Defendant's own substantial economic benefit, which comes directly at the expense of Lorstan. Stanise Decl. ¶ 32-34. The opening of a New York based Loria Medical office and the solicitation of Lorstan physicians to work within Loria Medical offices is violative of the Lorstan Operating Agreement. Stanise Decl. ¶ 37.

7

The First Amendment to the Lorstan Operating Agreement further revises Section 17.1 to state as follows:

> "17.1 <u>No Other Obligations</u>. Except as otherwise set forth herein, no Member (including its directors, officers, employees, shareholders, and Affiliates) shall have any obligation to any other Member or the Company to present any business opportunity to the company or to refrain from taking any such opportunity for its own account individually or as a partner, member, shareholder, or otherwise) or from recommending any such opportunity to others, or to refrain from engaging in any business or possessing an interest in any other venues of any nature or description, independently or with others, for its own account; provided however,
>
> (b) Dr. Victor Loria **shall not pursue**, directly or indirectly, other than through Company or a management company which is a subsidiary of Company, **any commercial ventures relating to the opening of multiple medical offices**.
>
> (c) Dr. Victor Loria **shall not pursue**, directly or indirectly, other than through Company, **any commercial ventures derived from the introduction of Dr. Loria to any Person by John Stanise**." (See Exhibit "A" p. 2 ¶ 3.)

Defendant, by seeking to open a New York based Loria Medical Office and by soliciting current licensees, some of whom were introduced to the Defendant by Stanise, to join Defendant in the opening up of new offices under the Loria Medical brand name, is in direct violation of Paragraphs 17.1 (b) and (c) of the First Amendment of the Lorstan Operating Agreement. Stanise Decl. ⁋ 41. The First Amendment to the Operating Agreement was entered into for the very purpose of preventing this exact conduct by the Defendant and avoiding a circumstance whereby Lorstan and Lorstan licensee physicians were caused to compete against the Defendant and his Loria Medical practice. Stanise Decl. ⁋ 43.

8

## ARGUMENT

### I.  DEFENDANT HAS NOT MET THE EXTRAORDINARY BURDEN REQUIRED TO OBTAIN A PRLEIMINARY INJUNCTION

A preliminary injunction "is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Salinger v. Colting*, 607 F.3d 68,79 (2d Cir. 2010).[1]

A party seeking preliminary injunction must establish 1)  either a likelihood of success on the merits, or the existence of a sufficiently serious question going to the merits to make them fair ground for litigation, 2) a likelihood that it will experience irreparable harm in the absence of such interim relief, 3) that the balance of comparative hardships tips decidedly in its favor and (4) that the public interest would not be disserved by the issuance of an injunction.. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015)); Fed. R. Civ. P. 65(a).

### A.  Defendant Has Not Shown a "Clear" or "Substantial" Likelihood of Success on the Merits

The principal purpose of a preliminary injunction is to preserve the status quo while the parties resolve their dispute in litigation. Most injunctions are, therefore, limited to prohibitory relief.  Where, as is the case here, a party seeks a mandatory injunction that commands a positive act, the standard is even higher. A mandatory injunction should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Associates, Inc. v. Saban Entm't, Inc*.,

---

[1] It is well established that in this Circuit, the standard for an entry of a TRO is the same as for a preliminary injunction." *Somoza v. NYC Dep't of Educ.,* No. 06 CIV. 5025 (VM), 2006 WL 1981758, at *3 (S.D.N.Y. July 10, 2006).

60 F.3d 27, 34 (2d Cir. 1995) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). Defendant's request for preliminary relief requires a significant alteration of the status quo by asking the court to provide mandatory relief, which affirmatively allows him to violate the unequivocal language in the Agreement. The Operating Agreement clearly and unambiguously bars him from opening new offices. Despite agreeing to these terms, the defendant is asking the court for injunctive relief to enable him to do precisely what he is contractually forbidden from doing, i.e. to open up a New York office, to obtain keys to access compounding labs which he has no oversight over and no right to access, and to permit him to take actions which he is not contractually required or otherwise entitled to take. Defendant has not made the clear and substantial showing necessary to obtain mandatory injunctive relief by showing that is he entitled to the relief requested, or that very serious damage will result from a denial of preliminary relief.

Defendant has produced no evidence to support his application and cannot seriously suggest that he is entitled to a preliminary injunction on the absence of any showing that he has a likelihood of success on the merits. In fact, the plain wording of the Operating Agreement mandates a completely contrary result. Defendant's request rests on false premises and mischaracterization of facts. His requested relief asks the court to mandate actions which actions are in direct violation of the Lorstan Operating Agreement and therefore, must be denied.

1. **Defendant's Claim That He Has Been "Locked Out" From Oversight Over the Company's Medical Operations, Particularly, its Compounding Labs is Untrue and is Offered as a Pre-Textual Basis for Loria to Gain Full Control of Lorstan**

Defendant's role in the Company is, and has always been, to serve in a limited capacity to provide technical support on medical and pharmaceutical matters, whereby he was required to train licensees physicians on how to use the pharmaceutical product and to provide technical advice as required regarding compound and medical procedure matters. He has never had keys to the

independently owned compounding labs, nor has he had any responsibility for oversight of these labs. These labs are independently owned, and Loria has no business purpose or contractual right to enter them. Defendant's claim that he has been locked out of Lorstan's medical operations, particularly the compounding labs, is simply untrue. These claims are offered to the Court as a pre-text to allow Loria to usurp full operational control and authority, so as to allow Loria to continue to interfere with and sabotage the success of Lorstan in furtherance of his scheme to co-opt and misappropriate Lorstan business opportunities for his own personal benefit. Defendant offers no evidentiary support for the argument that this requested relief should be granted.

## 2. Defendant's Request for Expedited Relief Asking the Court to Allow Him to Open a New York Medical Facility

Defendant's conduct, including his refusal to abide by the terms of the Company's Operating Agreement, his refusal to perform his contractual duties and obligations, by *inter alia*, refusing to train doctors, refusing to provide technical assistance with respect to medical pharmaceutical matters, by threatening to open new medical offices in direct competition with Lorstan and by refusing to make needed pro rata capital contributions, is part of Loria's scheme to force Plaintiff to renegotiate the terms of the Operating Agreement. Loria's plan to open a competing medical facility in New York is in direct violation of the unequivocal terms of Paragraphs 17.1 (b) and (c) of the Second Amendment of the Lorstan Operating Agreement.[2] Certainly, Defendant is not entitled to injunctive relief allowing him to breach the very terms of

---

[2] The First Amendment further revises Section 17.1 to state as follows:

(b)      Dr. Victor Loria shall not pursue, directly or indirectly, other than through Company or a management company which is a subsidiary of Company, any commercial ventures relating to the opening of multiple medical offices.

(c)      Dr. Victor Loria shall not pursue, directly or indirectly, other than through Company, any commercial ventures derived from the introduction of Dr. Loria to any Person by John Stanise." (See Exhibit "B" p. 2 ¶ 3.)

the Agreement and which would moot this action. Loria's claim that at one time he had an office in New York does not vitiate his contractual obligation requiring him not to open any new medical facilities and not to solicit potential Lorstan licensee physicians to join any such new offices. In fact, Loria's closing of his prior New York based office was made as part of the agreement to execute the First Amendment to the Operating Agreement. The First Amendment to the Operating Agreement was entered into for the very purpose of preventing this exact conduct by the Defendant and avoiding a circumstance whereby Lorstan and Lorstan licensee physicians were caused to compete against the Defendant and his Loria Medical practice. Loria has not shown a likelihood of success as to how he would prevail on the merits, where Loria is seeking to act directly in contravention to the Operating Agreement.

### 3. Defendant's Request for Injunctive Relief Requiring Stanise and Lorstan Employees to Perform their Business Functions and Work with Dr. Loria as They Did Prior to this Dispute

Defendant assertions--with no factual support or evidence-- that Stanise and other "Lorstan employees" are breaching the terms of the Operating Agreement are both vague and unfounded. Contrary to these contentions, Stanise has been actively attempting to continue to operate Lorstan, despite Loria's failure to provide his financial contribution, and disruptive conduct and his failure to perform his limited duties, by refusing to train doctors and refusing to provide technical assistance with respect to medical pharmaceutical matters. In addition, Loria has interfered with Lorstan's trained pharmacist, who is not an employee of Lorstan and who is not paid a salary, by threatening her professional license, leading to her temporary resignation and creating barriers for her continuing under the existing arrangement whereby she had previously agreed to sub-contract with Lorstan Licensee physicians to perform compounding. Under these facts and circumstances, defendant has not made any showing that 1) Stanise and Lorstan Employees are not performing

their business functions and 2) that he will likely succeed on the merits in any regard with respect to his any of his asserted claims for relief, let alone that he has a clear likelihood of success on the merits. Accordingly, he is not entitled to the injunctive relief sought herein.

Loria claim that an injunction should be issued requiring Stanise to share the Company's financial information with him is, like his other arguments, a strawman. Stanise, at Loria's request, has been, and continues to, provide all of the Company's financial records to Loria's accountant. In addition, Loria has remote password protected access to all of Lorstan's – and the entities that own the labs – bank accounts. Loria already has the access that he asks the Court to grant him. This request, for relief he already has, undermines the bona fides of the remainder of Loria's application.

B.   **Defendant Has Not Shown a Likelihood of Irreparable Harm**

Defendant's application for a preliminary injunction must be denied because he has failed to demonstrate that he will suffer *any harm,* let alone, irreparable, harm in the absence of injunctive relief. "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. V. United Press, Intern, Inc.* 903 F.2d 904,907(2d Cir. 1990). Further, irreparable harm must be shown by the moving party to be imminent, not "remote or speculative." *Reuters,* 903 F.2d at 907.  The movant must establish not a mere possibility of irreparable harm, but that it is *likely* to suffer irreparable harm if equitable relief is denied. *JSG Trading Corp. v. Tray-Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir. 1990). Defendant argues, with no evidence or factual support, that without injunctive relief he will suffer irreparable harm from potential lawsuits if patients are harmed (2) the potential loss of his  medical license if he is sued, (3) financial hardship from the loss of potential personal income if not allowed to open a  New York office. None of these arguments has any merit. They are premised entirely on lies and intentional

misrepresentations. Apparently, Loria will stop at nothing to further his own personal financial interests to the detriment of the Company.

Defendant cannot make the showing of irreparable harm necessary to justify the extraordinary relief of a preliminary injunction. "[U]nless a movant can show 'an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995); see also *Sweeney v. Bane,* 996 F.2d 1384, 1387 (2d Cir. 1993) (upholding denial of preliminary injunction seeking to prevent erroneous Medicaid co-payments because harm was purely financial). In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied. See *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990); *Sierra Club v. Hennessy,* 695 F.2d 643, 647 (2d Cir. 1982).

Defendant cannot show, and has not shown, a likely and imminent threat of harm. Loria's principal argument is far- fetched and completely speculative. First, he argues that without an injunction he will be locked out of Lorstan's compounding labs which would prevent him from conducting oversight of them—despite having never exercised any active "oversight" over the compounding labs prior to this dispute arising. Second, he extrapolates from this false premise that this *could* result in patient harm—fabricating a false narrative that Plaintiff plans to change the compounding process despite clear email correspondence demonstrating to the contrary. Third, he continues to extrapolate by musing that this *could* potentially expose him to lawsuits from licensees and patients—despite the existence of protective hold harmless and indemnification clauses within the licensing and trainings agreements. Using these false assertions, defendant leaps to the unfounded and totally speculative claim that if he is not given the keys to the independently owned and operated labs, he will lose his medical license. Defendant knows, and is fully aware,

that any Lorstan Product compounded pursuant to the Company's licensing agreements is done under the auspices of the licensee physicians' medical license, not his, and therefore subjects Loria to no potential exposure. The facts completely belie Loria's patently false assertions built upon his false narrative. First, Lorstan does not own any labs. The compounding labs are independently owned and not subject to oversight by Loria. Second, Lorstan does not, and cannot, compound pharmaceuticals. The compounding is done by a licensed pharmacist under the licensee physician's medical license pursuant to the Lab Usage Agreement. Third, neither Lorstan nor defendant is in any way responsible for ensuring that the compounding is done appropriately. Fourth, the Lorstan Licensee Agreement contains hold harmless language that indemnifies Lorstan and the Defendant for any potential harm arising from the licensee physicians conduct or the use of pharmaceuticals compounded pursuant to the Lorstan Licensee Agreement. Fifth, Defendant has no responsibility for oversight of the labs as Lorstan has retained independent experts to certify all labs used by licensee physicians for compounding the Lorstan product meet sterility requirements and all applicable standards, sufficient to allay any assertion of a threat to the public health.  In the face of these incontrovertible facts, Defendant cannot demonstrate that there is any threat of irreparable harm, let alone imminent and likely harm of any sort. "A mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co.,* 934 F.2d  30, 34 (2d Cir. 1995).

Finally, as Defendant admits, any loss he claims from not obtaining injunctive relief allowing him to open a New York office is a financial one--he claims to face the loss of the ability to support himself if he is not allowed to open a New York office. Irreparable harm is an "injury for which a monetary award cannot be adequate compensation." *Jayaraj v. Scappini*,66 F.3d 36, 39 (2dCir.1995). Any threatened harm from the defendant's inability to open an New York office

is compensable with monetary damages. Moreover, Defendant has a medical office and practice in Florida and is simply seeking to expand that practice for his own financial gain. In addition, he explicitly agreed in the Operating Agreement that he would NOT open multiple offices. Loria seeks, by his application, for the Court to completely disregard the prohibition that he expressly his smacks of true bad faith. For this reason alone, Loria cannot show irreparable harm. Accordingly, he is not entitled to injunctive relief. Indeed, "[i]n the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999).

C.     **The Balance of Equities Tips Decidedly in Plaintiff's Favor**

Despite Defendant's false narrative, there is no question that the equities tip decidedly in Plaintiff's favor. The relief requested by Defendant directly threatens Lorstan's continued existence and is nothing more than a request of this Court to sanction Loria's violative behavior. Essentially, Loria is asking the court to mandate that he be allowed to breach the terms of the Operating Agreement by allowing him to open up competing medical facilities in direct competition with Lorstan and in violation of the Agreement. Defendant admits that he is pursuing opening new commercial businesses to provide the same services as those provided by Lorstan to licensee doctors  and potential new licensees. Loria's new offices would be in direct competition with Lorstan and would threaten its viability. Defendant's intent is manifestly clear; he is seeking to capitalize on presently available business opportunities that have been developed by and for Lorstan, for his own personal gain. The relief requested by the Defendant effectively allows him to cease Lorstan operations under the guise of applying his "medical oversight." Loria's argument with respect to oversight is nothing more than Defendant's attempts to develop a pre-text to support his continued breaches of the Agreement. Loria's refusal to train doctors, to provide technical

assistance with respect to medical pharmaceutical matters, and to make pro rata capital contributions completely upends his claim that the balance of equities tips in his favor. Loria is attempting to force his partner to accede to an unfavorable renegotiation of the Lorstan Operating Agreement that would allow Loria to misappropriate Lorstan's present and future business opportunities and deprive Stanise of the benefits of his bargin In contrast, Plaintiff seeks nothing more than to hold Loria to the agreed upon terms of the Operating Agreement and to see the Company continue to develop and grow. Clearly the balance of equities tip in favor of the Plaintiff, who has continually sought to abide to both the letter and spirit of the Lorstan Operating Agreement, even in the face of Loria's obstructionist behavior.

### D. The Public Interest is Not Served by Granting Defendant's Motion

The public harm that Defendant touts is imaginary, if not entirely feigned for the purpose of attempting to sway this Court. Loria would have this Court believe that in the absence of him being granted 100% operational control, that there is an imminent risk of harm to the public. In fact, the opposite is true. Plaintiff, despite the lack of support from Loria, has developed a fully compliant pharmaceutical company that operates within all applicable laws and regulations and that retains licensed and trained professionals and experts as necessary to ensure Lorstan's and Lorstan's Product's safety and compliance. It is defendant who is failing to perform the duties he is obligated to provide, like medical and technical support, thus causing Lorstan to have to rely on outside consultants for such expertise. Loria's obfuscation of the true facts with claims of financial harm have nothing to do with harm to the public and everything to do with his interest in increasing his own financial wealth at the expense of Lorstan. The public interest is not served by mandating action through a preliminary injunction which would result in the whole sale disregard of contractual obligations, especially when that conduct would result in the destruction of a small

company. Rather the public interest here is served by the enforcement of the parties' lawful agreement, and this factor overwhelmingly favors the Plaintiff. See, *Benihana America. Benihana, Inc. v. Benihana of Tokyo, LLC,* 784 F.3d 887, 898 (2d Cir. 2015)

**CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion for a temporary restraining order and preliminary injunction in its entirety and award Plaintiff such other and further relief as this Court deems just, proper and fair.

Dated: New York, New York
May 19, 2020

The Law Offices of Neal Brickman, P.C.
*Attorneys for Plaintiff*

By:   _____
Neal Brickman
Jason Stewart
The Law Offices of Neal Brickman
Neal Brickman
Attorneys for Plaintiff
420 Lexington Avenue, Suite 2440
New York, New York 10170
(212) 986-6840