UNITED STATES DISTRCIT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
JOHN STANISE,                                       :
                                                    :
                         Plaintiff(s),              :
                                                    :          **Case No.: 1:20-CV-02769-VSB**
            v.                                      :
                                                    :
VICTOR LORIA,                                       :
                                                    :
                         Defendant(s).              :
---------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CROSS MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**


The Law Offices of Neal Brickman, P.C.
Neal Brickman, Esq.
Jason Stewart, Esq.
*Attorneys for Plaintiff John Stanise*
420 Lexington Avenue, Suite 2440
New York, New York 10170
Tel: (212) 986-6840
Fax: (212) 986-7691
Neal@Brickmanlaw.com
Jason@Brickmanlaw.com

## TABLE OF CONTENTS

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CROSS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

PRELIMINARY STATEMENT………………………………………………….....   1

FACTUAL BACKGROUND………………………………………………………   3

ARGUMENT……………………………………………………………………..   7

    I.     LEGAL STANDARD FOR INJUNCTIVE RELIEF…………….....   7

            A.  Irreparable Harm…………………………………………………...   7

            B.  Likelihood Of Success On The Merits…………………………..   9

    II.    PLAINTIFF HAS MET THE STANDARD FOR PRELIMINARY INJUNCTION…………………………………….....   10

            A.  A Temporary Restraining Order And Preliminary Injunction Are Necessary To Prevent Irreparable Harm…………………....   10

            B.  Plaintiff is Likely to Succeed on the Merits……………………..   12

            C.  There Are Sufficiently Serious Questions On The Merits And The Balance Of Hardships Tip Decidedly In Plaintiff's Favor………………………………………………….....   13

CONCLUSION…………………………………………………………………...   14

# TABLE OF AUTHORITIES

**Cases:**

*H-M Wexford LLC v. Encorp. Inc.,*
 832 A.2d 129, 140 (Del. 2003)…………………………………………... 12

*Ibrahim v. United States,*
 650 F. Supp. 163 (N.D.N.Y.), aff'd, 834 F.2d 52 (2d Cir. 1987)………….. 10

*Jacobson & Co. v. Armstrong Cork Co.,*
 548 F.2d 438, 445 (2d Cir.1977)…………………………………………... 10

*Mastercard Int'l Inc., v. Federation Internationale De Football Ass'n,*
 F. Supp.2d - ,2006 WL 3531196 at * 56 (S.D.N.Y. Dec. 7, 2006)…………. 11

*Register.com v. Verico, Inc.,*
 356 F.3d 393 (2d Cir. 2004)…………………………………………... 11

*Reuters Ltd. v. United Press Int'l, Inc.,*
 903 F.2d 904, 907 (2d Cir.1990)…………………………………………... 10

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.,*
 754 F. Supp. 2d 616, (S.D.N.Y. 2010)…………………………………… 11, 13, 14

*Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.,*
 749 F.2d 124, 125 (2d Cir. 1984)…………………………………………... 8, 10

*Salinger v. Colting,*
 607 F.3d 68, 75(2d Cir. 2010)…………………………………………... 10

*Skye Mineral Inv'rs, LLC v. DXS Capital (U.S.) Ltd.,*
 No. 2018-0059-JRS, 2020 Del. Ch. LEXIS 72 (Ch. Feb. 24, 2020)……….. 13

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,*
 60 F.3d 27, 37 (2d Cir. 1995)…………………………………………. 11

*Weiss v. Nw. Broad. Inc.,*
 140 F. Supp. 2d 336, 342 (D. Del. 2001)…………………………………... 12

**Statutes:**

Fed. R. Civ. P. 65…………………………………………………………... 7, 10

Plaintiff John Stanise respectfully submits this memorandum of law in support of his cross motion for a temporary restraining order and a preliminary injunction compelling Defendant to comply with the Lorstan Operating Agreement.

## PRELIMINARY STATEMENT

The issuance of a preliminary injunction preventing Defendant Victor Loria ("Loria") from opening up additional competing Loria Medical offices and compelling him to make additional pro rata capital contributions is required in order to prevent the demise of Lorstan Pharmaceutical LLC ("Lorstan" or the "Company".) Loria has made it quite plain that he has no loyalty to the Company and is only concerned with maximizing revenue to his competing private medical practice. He has done, and continues to do, everything in his power to disrupt Lorstan's business and attempt to shut it down, ignoring, in the process, agreements he made with his partner and any and all obligations that he owes to the Company. Each of the arguments that he has made to this Court in support of his frivolous motion to transfer venue and meritless motion for preliminary injunctive relief is based upon a knowingly false factual recitation, a selective and misleading citation to the Company's Operating Agreement, and a gross misstatement of the controlling law. His conduct is sanctionable and his destructive behavior must be stopped.

This matter arises out of Defendant's unlawful refusal to perform his contractual obligations in furtherance of his scheme to seize opportunities for himself in contravention of his contractual and fiduciary obligations to his business partner, the Plaintiff, John Stanise, and to their jointly owned company, Lorstan Pharmaceutical LLC (the "Company" or "Lorstan"). Stanise seeks a temporary restraining order and preliminary injunction to compel defendant's compliance with his contractual obligations. Specifically, to avoid further future irreparable harm Defendant must be enjoined from the following:

1

a. Opening any medical offices in addition to his Miami office in violation of Paragraph 17.1 (b) as set forth in the First Amendment to the Company's Operating Agreement;

b. Pursuing directly or indirectly, other than through the Company, any commercial ventures derived from the introduction of Dr. Loria to any person by John Stanise in violation of Paragraph 17.1 (c) as set forth in the First Amendment to the Company's Operating Agreement;

c. Doing business with current Lorstan licensees or any physicians who are current potential future licensees away from the Company;

d. Refusing to make his pro rata capital contributions in accordance with the Operating Agreement; and

e. Taking further intentional actions, such as unilaterally closing the Company's Operating bank account, which hinder, delay or otherwise interfere with the business operation of the Company, including Defendant's refusal to fulfill his duties as medical advisor and/or otherwise preventing the compounding of the Company's patented pharmaceutical product by and for licensees' use.

Defendant's ongoing violations of the governing agreement between the parties and his flagrant disregard of his fiduciary duties has already caused and will continue to cause irreparable harm to the Plaintiff. Moreover, Paragraph 19.8 of the Agreement, entitled "Remedies," provides that each party stipulates and agrees that in the event of a breach or threatened breach, the other parties hereto will suffer irreparable harm. The full text of the provision is as follows:

> "Each party hereto acknowledges and agrees that the remedies at law for a breach or threatened breach of any of the provisions of this Agreement that affect the rights of the other parties hereto would be inadequate and, in recognition of this fact, agrees that, in the event of such a breach or threatened breach, in addition to any remedies at law, each party hereto shall be entitled to equitable relief in the form of specific performance, temporary restraining order, temporary or permanent injunction, or any other equitable remedy which may then be available, without the necessity of proving irreparable harm. **Each party hereby stipulates and agrees that in the event of such a breach or threatened breach, the other parties hereto will suffer irreparable harm**." (See Exhibit "A" pp. 29-30, ¶ 19.8)(emphasis added).

2

For these reasons and those that follow, we respectfully urge the Court to grant Plaintiff's motion for a temporary injunction restraining order and a preliminary injunction. Stanise's entitlement to this remedy is unassailable both factually and as a matter of law.

## **FACTUAL BACKGROUND**

Stanise is the Chief Executive Officer ("CEO") and 30% equity member of Lorstan Pharmaceutical LLC (the "Company" or "Lorstan"). Victor Loria ("Loria") is his business partner and a licensed cosmetic dermatologist who holds the remaining membership units of the Company. Stanise Decl.¶ 1. Loria maintains a private medical practice, Loria Medical, in Miami, Florida. Stanise Decl. ¶ 5.

The Company, a Delaware Limited Liability Company, was formed on or about May 19, 2016. Stanise Decl.¶ 6. Simultaneous with its formation, Stanise and Loria executed an Operating Agreement (the "Agreement"), which set forth the terms upon which the Company would be operated. The Agreement has been amended four times. Stanise Decl.¶ 6. The First Amendment to the Operating Agreement, Section 17.1 (b), executed on March 30, 2018, specifically and unequivocally prohibits Loria from opening up multiple offices. He is limited to operating his Miami, Florida Loria Medical office. Stanise Decl.¶ 7.

Stanise resides in Connecticut, and the Company is, and has always been, headquartered in -- and with all business operations conducted out of -- the State of Connecticut. Stanise Decl.¶ 8. The Company's only physical office is in Wilton, Connecticut. Stanise Decl.¶8. All vendor invoices are received into, and paid out of, that office. Stanise Decl.¶ 8. Loria's attestation that the Company is based in Florida is entirely untrue. The Company has no office in Florida and none of its operations are conducted in that state. Stanise Decl.¶ 8. The Company's operations

3

are based in Connecticut, with only licensee physician training taking place at Defendant's Florida-based Loria Medical offices.  Stanise Decl.¶ 9.

In his submissions to the court, Loria has completely mischaracterized the facts. Contrary to his assertions, Lorstan is not in the business of manufacturing or selling pharmaceutical products. Rather, Lorstan licenses medical technology to licensee physicians to allow Lorstan licensees to compound Lorstan's Patented Silicone Product (the "Product") under the auspices of the licensees' own medical licenses in accordance with a Lorstan Licensee Agreement. Stanise Decl.¶ 10. The Product was invented by Loria and is injected in patients by licensee doctors to cause permanent male enhancement. The patent, which was obtained by the Company's own efforts, and the right to commercialize the Product, were irrevocably assigned by Loria to Lorstan. Stanise Decl.¶ 11 Lorstan is paid a per dosage fee each time a licensee physician compounds pursuant to the Lorstan Licensing Agreement. Lorstan does not sell, nor is it allowed under the law to sell, pharmaceutical products. Stanise Decl. ¶ 12. The compounding is performed by a licensed pharmacist within sterilized labs made available to the licensee physicians by virtue of a Lab Usage Agreement. Stanise Decl. ¶ 15. Loria does not do any of the compounding for licensee doctors and his medical license is not implicated, used, or exposed by virtue of any of the activities of the Company.

Defendant's claims that Lorstan owns and operates compound labs and that Lorstan manufacturers the Patented Silicone Product is a knowing misstatement of fact. The labs are not owned by Lorstan, but are independently owned and held by separate entities owned by the Plaintiff and Defendant.  Lorstan, by and through, its licensed and specially trained pharmacist, operates four labs—in California, Texas, Georgia, and Florida (still under construction)—within which the licensee doctors compound the Product by retaining Lorstan's pharmacist. Stanise

4

Decl.¶ 16. Lorstan has retained independent experts to certify that all labs used by licensee physicians for compounding the Lorstan product meet sterility requirements and all applicable regulatory standards. Stanise Decl.¶ 22. Defendant has had no role or responsibility in this regard. Defendant's contention that he is legally responsible for ensuring standards with respect to compounding facilities, methods, and techniques is also not true, as Lorstan does not and cannot compound pharmaceuticals. Stanise Decl. ¶ 19.

Defendant's role in the Company is, and has always been, to serve in a limited capacity as the Company's medical resource, whereby he is required to train licensee physicians on how to use the pharmaceutical product and to provide technical advice as required regarding compound and medical procedure matters for the labs. Stanise Decl.¶ 24. Loria has refused to perform these limited tasks unless Stanise agrees to allow him to open additional Loria Medical officers that would allow him to compete with, co-opt, or otherwise subvert potential patients away from Lorstan licensee physicians, thereby harming Lorstan's economic interests, in contravention of the Agreement. Stanise Decl.¶ 25,33. Defendant has approached a number of Lorstan licensee physicians, and/or potential Lorstan licensee physicians about those physicians joining his Loria Medical Practice in direct contravention of the Agreement. Stanise Decl.¶ 34. Defendant has repeatedly threatened to open a new office in New York, and upon information and belief, has begun to do the necessary preliminary work to have the office open in a few weeks. Loria did not temporarily shutter his New York office as he claims, but permanently closed it on or about May 31, 2018 as part of an agreement relating to the Company's First Amendment to the Operating Agreement which was signed two months earlier in March of 2018. Stanise Decl.¶ 35.

Defendant has sought to manufacture a conflict and develop a false narrative while refusing to abide by the terms of the Company's Operating Agreement and refusing to serve as a

medical resource, by *inter alia*, refusing to train doctors and refusing to provide technical assistance with respect to medical pharmaceutical matters. Stanise Decl.¶ 30. Loria threatened the pharmacist's professional license, leading to her temporary resignation and continues to create barriers for her continuing under the existing arrangement, whereby she had previously agreed to sub-contract with Lorstan Licensee physicians to perform compounding. Stanise Decl.¶ 31.

Loria, in order to disrupt Lorstan's operations and leverage Stanise to allow him to open multiple offices as Loria Medical, unilaterally and without any notice closed the Company's Operating Account and withdrew all of the money from that account which has crippled the Company's ability to operate. Stanise Decl.¶28.  In addition, Loria has refused to make required capital contributions, further jeopardizing Lorstan's ability to conduct business. Stanise Decl.¶ 51.

The Lorstan Operating Agreement was amended on or about March 30, 2018 (the "First Amendment") as part of an agreement where Loria agreed to permanently close his New York office. (See Exhibit "A" p. 1, ¶ 1).

The First Amendment revised Section 17.1 to state, in pertinent part, as follows:

> "17.1 <u>No Other Obligation</u>. Except as otherwise set forth herein, no Member (including its directors, officers, employees, shareholders, and Affiliates) shall have any obligation to any other Member or the Company to present any business opportunity to the company or to refrain from taking any such opportunity for its own account individually or as a partner, member, shareholder, or otherwise) or from recommending any such opportunity to others, or to refrain from engaging in any business or possessing an interest in any other venues of any nature or description, independently or with others, for its own account; <u>provided however,</u>

> (b) Dr. Victor Loria **shall not pursue**, directly or indirectly, other than through Company or a management company which is a subsidiary of Company, **any commercial ventures relating to the opening of multiple medical offices**.

> (c) Dr. Victor Loria **shall not pursue**, directly or indirectly, other than through Company, **any commercial ventures derived from the introduction of Dr. Loria to any Person by John Stanise.**" (See Exhibit "A" p. 2 ¶ 3.)

Loria now openly admits that he intends to open multiple new offices, including, as soon as within a few weeks a New York office, which he apparently intends to operate as self-compounding Loria Medical facilities. Loria Declaration ¶39. This plan, and his acts in furtherance of it, clearly violate the plain language of Section 17.1, as amended, of the Agreement.

Lorstan currently has licensee agreements with six physicians and continues to seek additional licensee physicians. But for Defendant's refusal to train additional physicians, Lorstan would, and could have, contracted with significantly more licensee physicians. Stanise Decl.¶ 44-45. At present, the laboratories located in Florida, Georgia, Texas and California are nearly ready to be fully operational. But for Defendant's refusal to provide technical support on medical and pharmaceutical matters, Lorstan would have the ability to provide licensees with laboratories to compound in at least four states. Stanise Decl.¶ 46-47.

Defendant's multiple breaches of the Agreement and ongoing conduct threatens the viability of the Company, and if allowed to continue, will cause the Company and Stanise to suffer significant and irreparable damages.

## ARGUMENT

## I.   LEGAL STANDARD FOR INJUNCTIVE RELIEF

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, this Court has authority to issue a temporary restraining order and preliminary injunction. Defendants' misconduct is especially and irreparably harmful right now. Injunctive relief is necessary to enjoin Defendant from his ongoing efforts to open new offices, soliciting doctors and pharmacists to work for him in his Loria Medical office which he is preparing to open imminently in New York, and from

7

refusing to perform contractual obligations without which the Company cannot operate. In the Second Circuit, the following factors govern a district court's decision whether to grant injunctive relief: (1) that the party requesting the relief will suffer irreparable harm in the absence of relief; (2) either, that it would likely succeed on the merits of its claim, or that the case presents sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor; (3) that the balance of hardships tips in the movant's favor; and (4) that the public interest would not be disserved. *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc*., 749 F.2d 124, 125 (2d Cir. 1984) (per curiam) As demonstrated below, Stanise easily and compelling satisfies all of these requirements.

## A. **Irreparable Harm**

Section 19.8 of the Agreement provides that "Each party acknowledges and agrees that the remedies at law for a breach or threatened breach of any of the provisions of this Agreement that affect the rights of the other parties hereto would be inadequate and, in recognition of this fact, agrees that, in the event of such a breach or threatened breach…each party hereto shall be entitled to equitable relief in the form of specific performance, temporary restraining order, temporary or permanent injunction, or other equitable remedy which may then be available, without the necessity of proving irreparable harm. Each party hereby stipulates that in the event of such a breach or threatened breach, the other parties hereto will suffer irreparable harm." Therefore, this threshold question as to whether injunctive relief is proper, need not be further analyzed. However, even without this contractual provision, Stanise would still be entitled to the injunctive relief herein requested.

Unless this Court grants Plaintiff's motion for injunctive relief, Stanise and Lorstan will suffer irreparable harm as a result of Loria's ongoing conduct which threatens the viability of the

Company. In the absence of the granting of the instant application, Loria will deprive Lorstan of its ability to generate revenue and of its ability to capitalize on presently available business opportunities. These existing and other future business opportunities that derive from the Company's goodwill and relationships with current and future licensees, will soon be damaged beyond repair. Moreover, Defendant's misconduct has the effect of wasting valuable and irreplaceable patent time, which continues to decline while Loria engages in his efforts to stall the Company's operations and growth. Lastly, should Loria be allowed to continue his plan to open Loria Medical offices in violation of the Operating Agreement, Loria will capitalize on unique business opportunities that were developed by Lorstan, and which, under the Lorstan Operating Agreement, he is barred from pursuing due to his fiduciary duties and his contractual covenants.

### B. Likelihood Of Success On The Merits

With respect to Plaintiff's likelihood of success on the merits, the Court is directed to Paragraphs 17.1 (b) and (c) of the First Amendment of the Lorstan Operating Agreement, which prohibits the exact conduct that Loria is engaging in—pursuing commercial ventures relating to the opening of multiple medical offices and pursuing commercial ventures derived from the introduction of Dr. Loria to any Person by John Stanise." In addition, Defendant's refusal to fulfill his contractual duties which require Loria to train new licensees, to make capital contributions and to refrain from interfering with Lorstan opportunities is in contravention with his fiduciary duties and his contractual obligations. Loria's fiduciary and contractual duties require him not to act in favor of his own personal business interests at the expense of Lorstan. Given the foregoing, it is clear that Plaintiff will, undoubtedly, prevail on the merits with respect to the Defendant's continuing and ongoing breach of contract and breach of fiduciary duties—and thus the injunctive relief as set forth herein must be granted.

## II.   PLAINTIFF HAS MET THE STANDARD FOR PRELIMINARY INJUNCTION

Under Rule 65 of the Federal Rules of Civil Procedure, an injunction is warranted where a plaintiff demonstrates a threat of irreparable harm in the absence of injunctive relief, and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in plaintiff's favor. See *Salinger v. Colting ,* 607 F.3d 68, 75(2d Cir. 2010), *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990). The uncontroverted facts set forth in the Stanise Declaration and the exhibits thereto, clearly establish that Plaintiff faces the threat of irreparable harm if Loria's harmful conduct is not enjoined. Plaintiff is entitled to preliminary injunction enjoining Loria from opening any new offices and from continuing to act in violation of his contractual and fiduciary obligations.

### A. A Temporary Restraining Order and Preliminary Injunction Are Necessary to Prevent Irreparable Harm

Injunctive relief enforcing the Operating Agreement and preventing Loria from engaging in any conduct that violates the terms of the Agreement is necessary to prevent the plaintiff from suffering irreparable harm. Courts routinely issue preliminary injunctions when the moving party demonstrates that it is likely to suffer irreparable harm without it. *Salinge*r, 607 F.3d at 80. Injury to the viability of a company to continue its operations has been found to constitute irreparable harm. See *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.,* 749 F.2d 124, 125-26 (2d Cir.1984) (per curiam)( The loss of "an ongoing business representing many years of effort and the livelihood of its [owners] constitutes irreparable harm"); see also *Ibrahim v. United States,* 650 F. Supp. 163 (N.D.N.Y.), aff'd, 834 F.2d 52 (2d Cir. 1987) (irreparable harm established where plaintiff's affidavit attests to a 30% loss of business); *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 445 (2d Cir.1977) (affirming finding of irreparable harm because plaintiff "presented

ample evidence to show a threatened loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages").

In the context of the loss of an exclusive right, (such as the licensing of the patented product here), "[i]Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation.' " *Mastercard Int'l Inc., v. Federation Internationale De Football Ass'n,* - F, Supp.2d - ,2006 WL 3531196 at * 56 (S.D.N.Y. Dec. 7, 2006) (entering permanent injunction against sports sanctioning body from terminating Mastercard world-wide sponsorship of soccer World Cup competition). See also *Tom Dohertv Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 37 (2d Cir. 1995); *Register.com v. Verico, Inc.*, 356 F.3d 393 (2d Cir. 2004) (holding that loss of reputation, goodwill and business opportunities that is "impossible to estimate 'with any precision'" constitutes irreparable harm). Irreparable harm has been found when absent an injunction, a party's product will be off the market altogether as a result of the alleged breach. See *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, (S.D.N.Y. 2010). Defendant's conduct is aimed squarely at forcing Stanise to capitulate to his illegitimate demands to open a New York office, which would threaten the Company's exclusive ability to operate and market to licensee physicians in the New York market.

Defendant, by seeking to open a New York based Loria Medical Office and by soliciting current or prospective Lorstan licensees to work in the new offices under the Loria Medical brand name is acting in direct violation of Paragraphs 17.1 (b) and (c) of the First Amendment of the Lorstan Operating Agreement. As Loria admits, the Loria medical offices he plans to open will be owned and operated by him -- not owned and operated by Lorstan, or through a management company which is a subsidiary of the Company. Accordingly, Loria's attempts to open a New York office or offices directly violates the terms of the Agreement. The Defendant is clearly

pursuing "commercial ventures relating to the opening of multiple medical offices" and is pursuing "commercial ventures derived from the introduction" of persons to Dr. Loria by John Stanise. The First Amendment to the Operating Agreement was entered into for the very purpose of preventing this exact conduct by the Defendant and avoiding a circumstance whereby Lorstan and Lorstan licensee physicians were caused to compete against the Defendant and his Loria Medical practice.

Additionally, Defendant's ongoing refusal to fulfill his contractual obligations by refusing to provide technical support on medical and pharmaceutical matters to the Company, and refusing to train Lorstan licensees, has caused irreparable harm  by preventing Lorstan from operating its business by, inter alia, providing licensees with laboratories to compound in at least four states. If defendant is not enjoined from ongoing violations of the Agreement, the Company will not be able to open and operate the Lorstan compounding labs and without them be put out of business.

### B. Plaintiff is Likely to Succeed on the Merits

In order to prevail on a breach of contract claim, a plaintiff must prove by a preponderance of the evidence: (1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) as a result of that breach, the plaintiff suffered damages. *H-M Wexford LLC v. Encorp. Inc.,* 832 A.2d 129, 140 (Del. 2003).[1] As the uncontroverted facts show, Defendant's actions in preparing to open a New York based Loria Medical Office, soliciting current licensees to join him in the opening up of new offices under the Loria Medical brand name, and in soliciting physicians introduced to him by Stanise, are in direct violation of Paragraphs 17.1 (b) and (c) of the First Amendment of the Lorstan Operating Agreement. In addition, Defendant's refusal to fulfill his contractual duties to train new licensees, to make capital contributions and to refrain from

---

[1] Section 19.7(a) of The Agreement provides; "This Agreement shall be governed in all respects by the internal laws of the state of Delaware without regard to conflict of laws provisions. Under Delaware law, express choice of law provisions in contracts are generally given effect. *Weiss v. Nw. Broad. Inc.*, 140 F. Supp. 2d 336, 342 (D. Del. 2001)

interfering with Lorstan opportunities has threatened the operation of the Company and caused damages to Plaintiff.

Without language in an LLC agreement to the contrary, the managers of a Delaware LLC owe traditional fiduciary duties of care and loyalty. *Skye Mineral Inv'rs, LLC v. DXS Capital (U.S.) Ltd.*, No. 2018-0059-JRS, 2020 Del. Ch. LEXIS 72 (Ch. Feb. 24, 2020). The Operating Agreements does not modify or eliminate fiduciary duties. Accordingly, Loria owes to this Plaintiff, his business partner, the fiduciary duties of care and loyalty. There are a plethora of facts supporting the breach of fiduciary duty claim. Loria's conduct has sabotaged the Company's operations and threatened its ability to continue to operate. In addition, Loria has misappropriated a Company opportunity. His conduct has been to the detriment of the Company and part of his scheme to force his business partner to capitulate to his demands. These facts unequivocally demonstrate that Loria has breached his fiduciary duties of loyalty and due care to the Plaintiff.

## C. There Are Sufficiently Serious Questions On The Merits And The Balance Of Hardships Tips Decidedly In Plaintiff's Favor

Even if a plaintiff does not have a likelihood of success on the merits, a preliminary injunction is still appropriate if there are sufficiently serious questions on the merits and the balance of hardships tips decidedly in plaintiff's favor. *Salinger*, 607 F.3d at 75. As a general rule, the balance of hardships tips in favor of a party who would unfairly incur irreparable injury at the hands of another, absent injunction, even if to issue the injunction could result in "unprofitability" or "a severe hardship on [the party to be enjoined]." See, e.g., *Rex Medical LP v. Angiotech Pharmaceuticals (US)*, 754 F.Supp.2d 616 (S.D.N. Y. 2010).

Similarly, "in general, public policy holds competent contracting parties to bargains made by them freely and voluntarily, and requires the courts to enforce such agreements*." Rex Medical,*

13

754 F.Supp.2d at 626. "The public has an interest in seeing that parties oblige by their contractual obligations and are not allowed to skirt such obligations at another's expense." Id.

In this action, the Plaintiff has demonstrated that he will be unfairly and irreparably harmed if Loria is not enjoined from opening a New York medical office, from continuing to solicit Lorstan licensees to work for him in his New York office, and from refusing to fulfill his duties to the Company, such as training the Lorstan licensees and making capital contributions. This conduct threatens to force the Company out of business. There is a clear public interest in enforcing the terms of the Agreement and holding Loria to his bargain. Loria, who has blatantly misrepresented the facts to this court, and abused his position as a fiduciary of the Company for his own personal benefit, should be compelled to comply with the plain and unambiguous terms of the contract between the parties.

Loria should be enjoined from opening any new offices, compelled to abide by the terms of the Agreement and perform his contractual obligations. The balance of equities tips decidedly in favor of Stanise, and the public interest supports issuance of an injunction.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for a temporary restraining order and preliminary injunction should be granted, immediately enjoining Defendant from:

a. Opening any medical offices in addition to his Miami office, in violation of Paragraph 17.1 (b) as set forth in the First Amendment the Operating Agreement;

b. Pursuing directly or indirectly, other than through the Company, any commercial ventures derived from the introduction of Dr. Loria to any person by John Stanise in violation of Paragraph 17.1 (c) as set forth in the First Amendment of the Operating Agreement;

c. Doing business with current Lorstan licensees or any physicians who are current potential future licensees away from the Company;

d. Refusing to make additional pro rata capital contributions in accordance with the Operating Agreement; and

14

e. Taking further intentional actions which hinder, delay or otherwise interfere with the business operation of the Company, including Defendant's refusal to fulfill his duties as medical advisor and/or otherwise preventing the compounding of the Company's patented pharmaceutical product by and for licensees' use.

Dated: New York, New York
May 19, 2020

The Law Offices of Neal Brickman, P.C.
*Attorneys for Plaintiff*

By:

Neal Brickman
Jason Stewart
The Law Offices of Neal Brickman
Neal Brickman
Attorneys for Plaintiff
420 Lexington Avenue, Suite 2440
New York, New York 10170
(212) 986-6840

15