UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN STANISE,<br><br>                Plaintiffs,<br><br>  v.<br><br>VICTOR LORIA,<br><br>                Defendant. | CASE No.: 1:20-cv-02769-VSB<br><br>DEFENDANT VICTOR LORIA'S ANSWER TO PLAINTIFF JOHN STANISE'S COMPLAINT, SEPARATE DEFENSES, AND COUNTERCLAIMS |

Defendant Victor Loria ("Dr. Loria"), by and through his undersigned counsel Stone & Magnanini LLP (Robert Magnanini, Esq., appearing), states as follows:

1. With respect to paragraph "1" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the allegations set forth plaintiff's theory of the case and to which no response is necessary. To the extent a response is required, the allegations are denied.

2. Admit the truth of the matters contained in paragraph "2" of the Complaint.

3. With respect to paragraph "3" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the allegations set forth plaintiff's theory of the case and to which no response is necessary. To the extent a response is required, the allegations are denied.

4. With respect to paragraph "4" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the allegations set forth plaintiff's legal theory of jurisdiction and to which no response is necessary. To the extent a response is required, Dr. Loria states that venue is inappropriate in the Southern District of New York.

5. With respect to paragraph "5" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the allegations set forth plaintiff's legal theory of venue and to which no response is necessary. To the extent a response is required, Dr. Loria states that venue is inappropriate in the Southern District of New York.

6. Admit the truth of the matters contained in paragraph "6" of the Complaint.

7. Admit the truth of the matters contained in paragraph "7" of the Complaint.

8. Admit the truth of the matters contained in paragraph "8" of the Complaint.

9. Admit the truth of the matters contained in paragraph "9" of the Complaint.

10. With respect to paragraph "10" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Pharmaceutical LLC ("Lorstan") Operating Agreement speaks for itself.

11. With respect to paragraph "11" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

12. With respect to paragraph "12" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

13. With respect to paragraph "13" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

14. With respect to paragraph "14" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

2

15. With respect to paragraph "15" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

16. With respect to paragraph "16" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

17. With respect to paragraph "17" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

18. Admit the truth of the matters contained in paragraph "18" of the Complaint.

19. Admit the truth of the matters contained in paragraph "19" of the Complaint.

20. With respect to paragraph "20" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

21. With respect to paragraph "21" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

22. Admit the truth of the matters contained in paragraph "22" of the Complaint.

23. With respect to paragraph "23" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

24. Admit the truth of the matters contained in paragraph "24" of the Complaint.

25. With respect to paragraph "25" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

26. With respect to paragraph "26" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

27. In regards to paragraph "27", Dr. Loria admits that a patent was procured with Dr. Loria as the inventor, and an assignment agreement was executed.

28. Admit the truth of the matters contained in paragraph "28" of the Complaint.

29. Admit the truth of the matters contained in paragraph "29" of the Complaint.

30. Deny Stanise's characterization of Dr. Loria's role as Chief Medical Officer as set forth in paragraph "30" of the Complaint.

31. Deny Stanise's characterization of Stanise's role as Chief Executive Officer as set forth in paragraph "31" of the Complaint.

32. Deny Stanise's characterization of Stanise's role as Chief Executive Officer as set forth in paragraph "32" of the Complaint.

33. Deny Stanise's characterization of Stanise's role as Chief Executive Officer as set forth in paragraph "33" of the Complaint.

34. Deny the truth of the matters contained in paragraph "34" of the Complaint.

35. Deny the truth of the matters contained in paragraph "35" of the Complaint.

36. Deny the truth of the matters contained in paragraph "36" of the Complaint.

37. Deny the truth of the matters contained in paragraph "37" of the Complaint.

38. Deny the truth of the matters contained in paragraph "38" of the Complaint.

39. Deny the truth of the matters contained in paragraph "39" of the Complaint.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

40. Deny the truth of the matters contained in paragraph "40" of the Complaint.

41. Admit the truth of the matters contained in paragraph "41" of the Complaint.

42. With respect to paragraph "42" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

43. Deny the truth of the matters contained in paragraph "43" of the Complaint.

44. Deny the truth of the matters contained in paragraph "44" of the Complaint.

45. Deny the truth of the matters contained in paragraph "45" of the Complaint.

46. Deny the truth of the matters contained in paragraph "46" of the Complaint.

### SECOND CAUSE OF ACTION

47. Deny the truth of the matters contained in paragraph "47" of the Complaint.

48. With respect to paragraph "48" of the Complaint, Dr. Loria neither admits nor denies the truth of the matters contained therein as the Lorstan Operating Agreement speaks for itself.

49. Deny the truth of the matters contained in paragraph "49" of the Complaint.

50. Deny the truth of the matters contained in paragraph "50" of the Complaint.

51. Deny the truth of the matters contained in paragraph "51" of the Complaint.

### THIRD CAUSE OF ACTION

52. Deny the truth of the matters contained in paragraph "52" of the Complaint.

53. Deny the truth of the matters contained in paragraph "53" of the Complaint.

54. Deny the truth of the matters contained in paragraph "54" of the Complaint.

55. Deny the truth of the matters contained in paragraph "55" of the Complaint.

56. Deny the truth of the matters contained in paragraph "56" of the Complaint.

## SEPARATE DEFENSES

### FIRST DEFENSE

57. The Complaint fails to state a claim against Dr. Loria upon which relief maybe granted.

### SECOND DEFENSE

58. Plaintiff has failed to join a necessary party – Lorstan.

### THIRD DEFENSE

59. Plaintiff lacks standing to bring this action.

### FOURTH DEFENSE

60. The alleged harms sustained by Plaintiff, if any, are the result of his own acts and/or omissions.

### FIFTH DEFENSE

61. This matter should be dismissed for improper venue.

### SIXTH DEFENSE

62. Venue should be transferred to the Southern District of Florida.

### SEVENTH DEFENSE

63. Plaintiff has unclean hands and should be denied any form of equitable relief.

**SEVENTH DEFENSE**

64. Dr. Loria has at all times acted in good faith an in accordance with a reasonable interpretation of the Lorstan Operating Agreement and the parties respective duties to one another.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant demands that the Complaint be dismissed in its entirety together with such other and further relief as the Court deems just and proper.

**COUNTERCLAIMS OF DEFENDANT VICTOR LORIA
AGAINST PLAINTIFF JOHN STANISE**

By and through his counsel of record, Stone & Magnanini LLP (Robert Magnanini, Esq., appearing), Counterclaimant Victor Loria ("Loria") states the following:

**JURISDICTION**

1. This Court has diversity jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and more than $75,000, exclusive of interest and costs, is at stake in this controversy.

**VENUE**

2. Venue is improper in the Southern District of New York. Venue is properly laid in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the company does business, solicits business and stands to do substantial future business in this district. Lorstan Pharmaceutical LLC's ("Lorstan") primary medical operations are located out of Dr. Loria's medical office in Miami, Florida, and the Lorstan operates a separately owned laboratory in Jacksonville, Florida.

## PARTIES

3. John Stanise is a resident of the State of Connecticut who at all relevant times served as Lorstan's Chief Executive Officer ("CEO") and is a minority member of Lorstan owning 30% of the company. Stanise has no medical training and is an accountant by trade.

4. Victor Loria is a resident of Florida who at all relevant times served as Lorstan's Chief Medical Officer ("CMO") and is the majority member of Lorstan owning 70% of the company. Dr. Loria is a licensed cosmetic dermatologist and surgeon, and also owns and operate a separate, non-affiliated medical practice ("Loria Medical") in Miami, Florida.

## STATEMENT OF FACTS

5. Dr. Loria is the majority owner (70%) and CMO of Lorstan, a Delaware limited liability company with its principal office in Florida.

6. In his capacity as the CMO of Lorstan, and the only licensed physician on staff, it is Dr. Loria's responsibility to ensure that Lorstan's medical operations follow all applicable federal, state and local laws and regulations. In sum, all medical and pharmaceutical related decisions are within his purview.

7. Stanise, the minority owner of Lorstan, acts as CEO. Stanise's purview is the business-side of Lorstan's operations, ensuring the company is meeting its financial obligations and obtaining necessary funding.

8. Lorstan was formed in 2016 to undertake the for-profit development, licensing, exploitation and commercialization of a pharmaceutical compound identified as a silicone oil based compound, or its derivatives, and the pending and existing patents which include but are not limited to U.S. Patent Number 9,993,578 B1 (June 12, 2018) (the "Patented Silicone Product").

9. Dr. Loria, as the sole inventor of the Patented Silicone Product, assigned his rights in the patent to Lorstan, as part of his contributions to creating the Company.

10. Lorstan's business model is simple. Dr. Loria trains physicians on how to use the Patented Silicone Product for certain medical injection procedures, and they become licensees of Lorstan. Under their license agreements, these licensee-physicians are entitled to purchase and use Lorstan's Patented Silicone Product for medical injection procedures performed in their own practices.

11. In order to manufacture the Patented Silicone Product, Lorstan operates compound laboratories in Florida, Georgia, Texas, and California which, through the use of a compound pharmacist or designated assistant, manufacture the Patented Silicone Product for distribution to Lorstan-licensee physicians.

## STANISE'S INTERFERENCE WITH DR. LORIA'S ROLE AS CMO

12. As the majority owner, CMO, inventor and patentee of Lorstan's only product and only licensed physician on Lorstan's staff, Dr. Loria is legally responsible for ensuring that Lorstan's compounding facilities and compounding methods and techniques meet applicable federal, state and local standards. Failure to meet those standards could result in patient harm, which would be disastrous both for Lorstan and for Dr. Loria individually as a licensed physician.

13. Initially, Stanise respected Dr. Loria's role as CMO, majority owner, and inventor of the Patented Silicone Product. Dr. Loria spent countless hours teaching Stanise and Lorstan's staff how to build a compliant compounding laboratory, and also teaching Lorstan's compounding pharmacist how to compound the patented formula.

14. In addition, Dr. Loria started training other Lorstan-licensee physicians in his technique and the use of the Patented Silicone Product.

15. During this time, Stanise did not interfere with Dr. Loria's ability to act as Lorstan's CMO, nor did he interfere with Dr. Loria's communications with Lorstan's staff and its compounding pharmacist, Dr. Loria's access to Lorstan's labs, or Dr. Loria's access to Lorstan's books and records.

16. Rather, as CEO, Stanise instead focused on the financial side of Lorstan's operations, including the company's accounting, corporate development, and the physical construction of Lorstan's laboratories.

17. Things have changed. Stanise, the accountant/CEO who is a minority owner of Lorstan, is now seeking to wrest complete control of both Lorstan (which Dr. Loria owns 70% of) and its compounding operations, including oversight and future formula changes.

18. As a medical doctor and the inventor of the Patented Silicone Product, Dr. Loria is best suited to overseeing and ensuring that Lorstan's compounding operations are meeting necessary state and federal standards.

19. Particularly troubling are Stanise's efforts to remove Dr. Loria from Lorstan's compounding operations. Specifically, Dr. Loria has been locked out of Lorstan's various compounding labs, and Lorstan's compounding pharmacist Erin Kutka has been instructed by Stanise not to speak with Dr. Loria (this, despite the fact that Dr. Loria taught her to compound the Patented Silicone Product, is her supervisor and pays 70% of her salary).

20. Stanise's efforts to remove Dr. Loria, the company's CMO, from its medical operations will prove disastrous for both Lorstan as an entity and Dr. Loria individually. Lorstan's compounding pharmacist has made several comments to Dr. Loria over the course of

the last several months that lead Dr. Loria to believe that she is incapable of performing her duties without Dr. Loria's assistance and oversight, which cannot be provided by Stanise, and which Dr. Loria is being blocked from providing.

21.     For example, Dr. Loria's assistance and guidance is vital to Lorstan's efforts to adjust the formula compound to optimize clinical outcomes. Ms. Kutka has little experience or know-how regarding the clinical aspect of Lorstan's Patented Silicone Product: she does not know what this formula does to the patient's skin, how it looks, feels, cosmetic outcomes and other related issues. These clinical observations may result in necessary changes to the formula to improve patients' clinical results – input that Dr. Loria, as the only medically licensed owner of Lorstan, can provide.

22.     Specifically, on one recent occasion, Lorstan's compounding pharmacist Ms. Kutka told Dr. Loria that she needed to create practice batches of the Patented Silicone Product because she only had two courses of training and was concerned with her own ability to produce a quality, consistent product and ensure patient safety.

23.     This does not inspire confidence, and at worse can injure patients, lead to lawsuits against Lorstan and Dr. Loria and jeopardize his license. Patients' health is at stake – as is Dr. Loria's medical license.

24.     When confronted regarding these issues, Stanise has told Dr. Loria, effectively, that his services are no longer required as CMO. Stanise claims that Lorstan's compounding labs can operate without a CMO, and without the inventor of the very patented product that they are compounding.

25. Furthermore, Stanise informed Dr. Loria on April 23, 2020, that he intends to modify or change both the ingredients in the Patented Silicone Product and the method that it is compounded.

26. Stanise is not medically trained. Stanise is the minority owner of a company that owns the rights to a patented product that Dr. Loria created and assigned to that Company. He has no ability, under Lorstan's Amended Operating Agreement (Dkt. No. 1, Doc. 1-1) to remove Dr. Loria as Lorstan's CMO or lock Dr. Loria out of the company's facilities and restrict Dr. Loria's access to certain portions of our Lorstan's books and records.

27. Indeed, on April 7, 2020, Stanise refused to provide Dr. Loria with a set of keys for Lorstan's compounding labs despite Dr. Loria's role as CMO and majority owner, claiming a false concern that Dr. Loria would steal medical supplies or cause damage to the labs, which, of course, is nonsensical since Dr. Loria is the majority owner of the labs.

28. Stanise has no right, contractual or otherwise, to bar Lorstan's compounding pharmacist – who reports to Dr. Loria in his capacity as CMO and majority owner of Lorstan – from speaking with Dr. Loria. His power grab is putting Lorstan's reputation at risk, and patient health in peril.

29. Stanise has threatened that after the COVID-19 shutdown, he intends to re-open all of Lorstan's compounding labs – without Dr. Loria's oversight as CMO – and restart the sale of his Patented Silicone Product over Dr. Loria's objections as to the wisdom or safety of this move.

## COUNT ONE – BREACH OF CONTRACT BY JOHN STANISE

30. Dr. Loria incorporates all of the allegations set forth in paragraphs 1 through 29 of this Counterclaim as if set forth herein.

31.   Dr. Loria and Stanise entered into a binding contract – the Lorstan Operating Agreement.

32.   The Lorstan Operating Agreement is to be governed by the laws of Delaware.

33.   Stanise breached the Lorstan Operating Agreement by, among other things: (a) locking Dr. Loria out from the medical operations of Lorstan; (b) instructing Lorstan personnel not to communicate with Dr. Loria; (c) refusing to provide Dr. Loria with physical access to Lorstan operated medical laboratories; (d) opening up a Lorstan bank account in the State of Connecticut without Dr. Loria's approval and without Dr. Loria having any access to the Lorstan account's checkbook; (e) continuing with efforts to re-open Lorstan's operations over Dr. Loria's objections.

34.   These actions, and others, constitute material breaches of the Lorstan Operating Agreement by Stanise.  He has impaired Dr. Loria's rights as the majority owner of the company, and ignored Dr. Loria's role as CMO.

35.   As a result of these breaches, Dr. Loria has been damaged.  He has lost any control, whatsoever, over a company that he is majority owner of and provides the majority of capital to.

36.   Wherefore, Dr. Loria hereby requests that the Court enter judgment in his favor awarding him preliminary injunctive relief to halt Stanise's efforts, along with monetary damages and such other relief that the Court deems equitable and just, including but not limited to payment of Dr. Loria's attorneys' fees, costs, and expenses.

**COUNT TWO – BREACH OF FIDUCIARY DUTY OF LOYALTY BY JOHN STANISE**

37.   Dr. Loria incorporates all of the allegations set forth in paragraphs 1 through 36 of this Counterclaim as if set forth herein.

38. Dr. Loria and Stanise, as co-owners of Lorstan, owe one another fiduciary duties of loyalty and care under Delaware law.

39. The Lorstan Operating Agreement is to be governed by the laws of Delaware.

40. Stanise breached his fiduciary duty of loyalty to Dr. Loria by, among other things: (a) locking Dr. Loria out from the medical operations of Lorstan; (b) instructing Lorstan personnel not to communicate with Dr. Loria; (c) refusing to provide Dr. Loria with physical access to Lorstan operated medical laboratories; (d) opening up a Lorstan bank account in the State of Connecticut without Dr. Loria's approval and without Dr. Loria having any access to the Lorstan account's checkbook; (e) continuing with efforts to re-open Lorstan's operations over Dr. Loria's objections.

41. These actions, and others, constitute a significant breach of Stanise's duty of loyalty to his business partner. Stanise has impaired Dr. Loria's rights as the majority owner of the company, and ignored Dr. Loria's role as CMO.

42. As a result of these breaches, Dr. Loria has been damaged. He has lost any control, whatsoever, over a company that he is majority owner of.

43. Wherefore, Dr. Loria hereby requests that the Court enter judgment in his favor awarding him preliminary injunctive relief to halt Stanise's efforts, along with monetary damages and such other relief that the Court deems equitable and just, including but not limited to payment of Dr. Loria's attorneys' fees, costs, and expenses.

**COUNT THREE – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BY JOHN STANISE**

44. Dr. Loria incorporates all of the allegations set forth in paragraphs 1 through 43 of this Counterclaim as if set forth herein.

45. Under the laws of Delaware, every contractual agreement is imbued with an implied covenant of good faith and fair dealing by which the parties agree not to impair each others reasonable expectations deriving from the contract.

46. For the reasons set forth above, Stanise has violated the spirit of the agreement and Dr. Loria's reasonable expectations as CMO and majority owner of Lorstan.

47. As a result, Dr. Loria has been – and continues to be – damaged.

48. Wherefore, Dr. Loria hereby requests that the Court enter judgment in his favor awarding him preliminary injunctive relief to halt Stanise's efforts, along with monetary damages and such other relief that the Court deems equitable and just, including but not limited to payment of Dr. Loria's attorneys' fees, costs, and expenses.

## COUNT FOUR – DEMAND FOR AN ACCOUNTING FROM JOHN STANISE FOR LORSTAN

49. Dr. Loria incorporates all of the allegations set forth in paragraphs 1 through 48 of this Counterclaim as if set forth herein.

50. Under the laws of Delaware, a member of a Delaware limited liability company is entitled to seek an accounting in a court of law wherein he shall be provided access to the company's books and records and an accounting of the company's finances.

51. Dr. Loria has been locked out of Lorstan's medical and financial affairs, as set forth above.

52. Dr. Loria, as the majority owner of Lorstan, hereby demands and is entitled to an accounting of the finances of Lorstan.

Wherefore, Dr. Loria hereby requests that the Court enter an order requiring that Stanise, as CEO and minority owner of Lorstan, provide Dr. Loria – the majority owner of Lorstan – with a full and complete accounting of the company's finances and complete access to the company's books and records.

## **DESIGNATION OF TRIAL COUNSEL**

Robert A. Magnanini, Esq. has been designated as trial counsel on behalf of the Plaintiff-Counterclaimant in the above captioned matter.

## **JURY DEMAND**

Plaintiff-Counterclaimant Dr. Loria demands a jury trial on all issues so triable in this action.

Dated: New York, New York
      May 22, 2020

                                    By: *s/ Robert A. Magnanini*
                                    Robert A. Magnanini
                                    **STONE & MAGNANINI LLP**
                                    100 Connell Drive, Suite 2200
                                    Berkeley Heights, NJ 07922
                                    (973) 218-1111
                                    rmagnanini@stonemagnalaw.com

                                    *Attorneys for Defendant Victor Loria*

## DECLARATION OF SERVICE

I hereby certify that on this date, I caused to be served on all counsel of record, electronically via the Court's electronic filing system, a true and correct copy of the foregoing, Defendant's Answer and Separate Defenses.

Dated: New York, New York
      May 22, 2020

                                  Respectfully submitted,

                                  By: *s/ Robert A. Magnanini*
                                  Robert A. Magnanini
                                  **STONE & MAGNANINI LLP**
                                  100 Connell Drive, Suite 2200
                                  Berkeley Heights, NJ 07922
                                  (973) 218-1111
                                  rmagnanini@stonemagnalaw.com
                                  *Attorneys for Defendant Victor Loria*