Robert A. Magnanini, Esq.
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel: (973) 218-1111
Fax: (973) 218-1106
*Attorneys for Defendant-Movant Victor Loria, D.O.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN STANISE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>VICTOR LORIA,<br><br>　　　　　Defendant. | Civil Action No. 20-cv-2769 |

**DEFENDANT DR. VICTOR LORIA'S OPPOSITION TO**
**PLAINTIFF STANISE'S CROSS-MOTION FOR INJUNCTIVE RELIEF**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .........................................................................................................................1

    I.     DR. LORIA SHOULD NOT BE ENJOINED FROM OPENING THE LIMITED NUMBER OF LORIA MEDICAL OFFICES REQUESTED IN HIS OWN MOTION PAPERS ............................................................................1

    II.    DR. LORIA HAS NO INTENT TO VIOLATE HIS CONTRACTUAL AGREEMENT WITH STANISE OR CAUSE STANISE ANY IRREPARABLE HARM ..................................................................................................4

    III.   DR. LORIA SHOULD NOT BE BARRED FROM WORKING WITH CURRENT LORSTAN LICENSEES OR ANY OTHER PHYSICIANS WHO ARE POTENTIAL OR FUTURE LICENSEES, AS SUCH WORK WILL BENEFIT LORSTAN ......................................................................9

    IV.   DR. LORIA SHOULD NOT BE REQUIRED TO MAKE ANY FURTHER CAPITAL CONTRIBUTIONS TO LORSTAN (A NON-PARTY) UNTIL SUCH TIME AS HE IS ALLOWED ACCESS TO LORSTAN OPERATED LABORATORIES, BOOKS AND RECORDS AND STANISE ENDS HIS INTERFERENCE WITH DR. LORIA'S ROLE AS CHIEF MEDICAL OFFICER OF THE COMPANY ........................................................................10

    V.    DR. LORIA HAS NO INTENT TO TAKE ANY ACTIONS TO HARM LORSTAN, RATHER BY REFUSING TO ALLOW MEDICAL OPERATIONS TO CONTINUE WITHOUT HIS OVERSIGHT, DR. LORIA IS PROTECTING LORSTAN, ITS LICENSEE-PHYSICIANS, AND THEIR PATIENTSFROM POTENTIAL HARM .......................................13

CONCLUSION....................................................................................................................15

**TABLE OF AUTHORITIES**

**Cases**

*Baker's Aid v. Hussmann Foodservice Co.*,
    830 F.2d 13 (2d Cir. 1987) .............................................................................................. 8

*Borey v. Nat'l Union Fire Ins. Co.*,
    934 F.2d 30 (2d Cir. 1991) .............................................................................................. 6

*Dorfmann v. Boozer*,
    414 F.2d 1168 (D.C. Cir. 1969) .................................................................................... 11

*Firemen's Ins. Co. v. Keating*,
    753 F. Supp. 1146 (S.D.N.Y. 1990) ................................................................................ 8

*Gramercy Warehouse Funding I L.L.C. v. Colfin Jih Funding L.L.C.*,
    No. 11 Civ. 9715 (KBF), 2012 U.S. Dist. LEXIS 3244,
    2012 WL 75431 (S.D.N.Y. Jan. 6, 2012) ........................................................................ 8

*Guttenberg v. Emery*,
    No. 13-2046 (JDB), 2014 U.S. Dist. LEXIS 37101 (D.D.C. Mar. 19, 2014) ............. 7-8

*Hybritech, Inc. v. Abbott Labs.*,
    No. 86-7461/AK (PX), 1987 WL 123997 (C.D. Cal. July 14, 1987) ........................... 14

*In re Arthur Treacher's Franchisee Litig.*,
    689 F.2d 1137 (3d Cir. 1982) ........................................................................................ 10

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
    596 F.2d 70 (2d Cir. 1979) .............................................................................................. 6

*Jayaraj v. Scappini*,
    66 F.3d 36 (2d Cir. 1995) ................................................................................................ 6

*McCollum v. McCollum*,
    67 S.W.2d 1055 (Tex. Civ. App. 1934) ................................................................... 10-11

*Milwaukee v. Activated Sludge, Inc.*,
    69 F.2d 577 (7th Cir. 1934) .......................................................................................... 15

*Riverside Publ'g Co. v. Mercer Publ'g L.L.C.*,
    CASE NO. C11-1249RAJ, 2011 U.S. Dist. LEXIS 85853,
    2011 WL 3420421 (W.D. Wash. Aug. 4, 2011) ............................................................. 7

*Shapiro v. Cadman Towers, Inc.*,
    51 F.3d 328 (2d Cir. 1995) .............................................................................................. 6

*Sweeney v. Bane*,
    996 F.2d 1384 (2d Cir. 1993) .......................................................................................... 6

*Tvc Alb. v. Am. Energy Care*,
    No. 1:12-CV-1472 (MAD/CRH), 2012 U.S. Dist. LEXIS 164219 (N.D.N.Y. Nov. 16, 2012)  7

*Vitamin Technologists, Inc. v. Wis. Alumni Research Found.*,
    146 F.2d 941 (9th Cir. 1944) ........................................................................................ 14-15

By way of a cross-motion, Plaintiff now (belatedly, several weeks after the filing of his complaint) seeks a temporary restraining order and preliminary injunction to prevent Dr. Loria from:

a. Opening any additional Loria Medical offices besides his current Miami location;[1]

b. Pursuing any other commercial ventures, in another attempt to financially squeeze Dr. Loria so as to compel him to turnover complete control of Lorstan to Stanise;

c. Doing business with his peers and professional acquaintances, in an attempt to silence Dr. Loria and remove him as the face of Lorstan;

d. Refusing to make further capital contributions to Lorstan, so as to require Dr. Loria to continue to support Stanise's income and the company's unchecked spending;

e. Taking actions to protect his interests and patient health.

While each of Stanise's demands will be addressed in turn, they all have a common theme: Dr. Loria is to continue to foot the bill for Lorstan, while having little to no input into the company's operations while the minority owner – accountant turned CEO John Stanise – is to have unfettered control over both the business and medical operations of Lorstan.  For the reasons set forth below, the Court should deny Stanise's belated and improvidently brought cross-motion for injunctive relief.

## ARGUMENT

### I. DR. LORIA SHOULD NOT BE ENJOINED FROM OPENING THE LIMITED NUMBER OF LORIA MEDICAL OFFICES REQUESTED IN HIS OWN MOTION PAPERS.

Dr. Loria currently earns no income from Lorstan.  Loria Decl., Dkt. No. 13-2, at ¶ 27; *see also* Ex. G to the Suppl. Loria Dec (attaching Dr. Loria's K-1 financial forms from Lorstan and showing his contributions and the company's losses). Instead, Dr. Loria foots at least 70% of

---

[1] As the Court will recall, Loria Medical is Dr. Loria's separate medical practice, and his major source of income by which he subsidizes Lorstan.

the costs of Lorstan's operations.  *Id.*  In order to make a living, Dr. Loria continues to operate a separate medical practice, Loria Medical.  *Id.* at ¶ 28.  Loria Medical operates from one location in Miami, Florida, close to where Dr. Loria resides.  *Id.*

In 2014, Dr. Loria opened a Loria Medical male enhancement focused office in New York.  *Id.* at ¶ 29.  This Loria Medical location pre-dates Lorstan, which was formed in 2016.  *Id.*  Loria Medical's New York male enhancement office voluntarily suspended operations in 2018, but the entity and licensing remains active.  *Id.*

At the Loria Medical New York male enhancement location, and before and after the creation of Lorstan, as the inventor of the Patented Silicone Product and a licensed physician, Dr. Loria compounded the product himself for Loria Medical's use on Dr. Loria's own patients.  *Id.* at ¶ 30.  Stanise was aware of this and voiced no objection to Dr. Loria's self-compounding at the New York location after the creation and operation of Lorstan for it's initial 2 years.  *Id.*  Dr. Loria followed and continues to follow that same self-compounding process at his current Loria Medical location in Miami, Florida, without objection from Stanise.  *Id.* at ¶ 31.

Stanise now seeks, by way of his cross-motion for injunctive relief – to block Dr. Loria from re-opening his Loria Medical male enhancement office in New York, as he claims it *could* have a *potentially* negative financial impact on Lorstan.  *Id.* at ¶ 32.  Stanise's claims are again unfounded, based on potential or planned events occurring, especially since  Lorstan has no licensee-physicians in New York.  *Id.*  Moreover, Stanise has no right under the Lorstan Operating Agreement or the common-law to prevent Dr. Loria from making a living.  *Id.* at ¶ 33.  To the extent Stanise objects to Dr. Loria self-compounding for a re-opened New York location, his objections are without merit – Dr. Loria already does this at his Miami location with Stanise's consent and Loria Medical's New York male enhancement location pre-dated the

2

creation of Lorstan and operated as a self-compounding facility for two years after Lorstan was in business.  *Id.*  Stanise should be estopped from his efforts to choke off Dr. Loria's income.

Stanise premises his cross-motion on the 2018 amendment to Lorstan's Operating Agreement  (Dkt. No. 1, Doc. 1-2), at Paragraph 17.1(b): "Dr. Victor Loria shall not pursue, directly or indirectly, other than through Company or a management company which is a subsidiary of Company, any commercial ventures relating to the opening of multiple medical offices."  Loria Decl., Dkt. No. 13-2, at ¶ 34.

However, Dr. Loria is not seeking to open "multiple medical offices" with self-compounding facilities outside of Lorstan's purview – Dr. Loria is simply seeking to re-open a New York male enhancement office that pre-dated the creation of Lorstan and which operated as a going concern until 2018.  *Id.* at ¶ 35.  Stanise is using the 2018 Amendment to the Lorstan Operating Agreement as a weapon – hoping that the financial pressure caused by Dr. Loria only being allowed to operate the Miami facility will result in Dr. Loria caving to Stanise's desires and effectively turning over complete control of Lorstan to him, its minority owner.  *Id.* at ¶ 37.  Respectfully, the Court should not allow this.  Stanise has not demonstrated a likelihood of success on the merits on this portion of his cross-motion seeking to bar the re-opening of Loria Medical's  New York male enhancement office, and this requested relief should be denied.

In addition to Loria Medical's current Miami location – where Dr. Loria is indisputably allowed to self-compound the Patented Silicone Product for Loria Medical's use – and Loria Medical's New York male enhancement location which Dr. Loria seeks to re-open as another self-compounding facility, Dr. Loria also wants to open multiple **_Lorstan-licensee_** Loria Medical locations that will *purchase* the Patented Silicone Product *from Lorstan* – just like any other

Lorstan-licensee physician.  *Id.* at ¶ 39.  Stanise seeks to block these new locations by way of his cross-motion for injunctive relief.

Paragraph 17.1(b) of the Lorstan Amended Operating Agreement allows Dr. Loria to open medical facilities that act as Lorstan-licensees and which pay Lorstan for access to the Patented Silicone Product: "Dr. Victor Loria shall not pursue, directly or indirectly, ***other than through Company*** or a management company which is a subsidiary of Company, any commercial ventures relating to the opening of multiple medical offices."  *Id.* at ¶ 40 (emphasis added).  By making these other Loria Medical facilities (outside of New York and Miami) regular Lorstan-licensee facilities that pay Lorstan for access to the Patented Silicone Product, Dr. Loria is seeking to use his contractual right to "pursue commercial ventures relating to the opening of multiple medical offices . . . through Company" – the very purpose Lorstan was created for.  *Id.* at ¶ 41.  Stanise cannot provide any compelling rationale for why Dr. Loria – the majority owner of Lorstan and inventor of the Patented Silicone Product – should be barred from paying Lorstan for the right to create Lorstan-licensee facilities, *thereby providing Lorstan with enhanced revenue*.  For this reason, Stanise's cross-motion for injunctive relief must be denied.

**II.   DR. LORIA HAS NO INTENT TO VIOLATE HIS CONTRACTUAL AGREEMENT WITH STANISE OR CAUSE STANISE ANY IRREPARABLE HARM.**

In Stanise's declaration, he claims that Dr. Loria is seeking to undermine Lorstan by having Lorstan licensee-physicians, or others whom Stanise refers to as "potential Lorstan licensee physicians," join Dr. Loria's medical practice, Loria Medical.  Stanise Decl., Dkt. No. 21, ¶ 34.  Stanise further claims that the alleged solicitation of Lorstan physicians to work at Loria Medical is "violative of the Lorstan Operating Agreement," *id*. at ¶ 37,  specifically the Operating Agreement's First Amendment, which states that Dr. Loria "shall not pursue, directly

4

or indirectly, other than through Company or a management company which is a subsidiary of Company, any commercial ventures relating to the opening of multiple medical offices . . . [and] shall not pursue, directly or indirectly, other than through Company, any commercial ventures derived from the introduction of Dr. Loria to any Person by John Stanise." *Id.* at ¶ 40.  Stanise claims that some of the Lorstan-licensees were introduced to Dr. Loria through Stanise, and that this introduction – coupled with the re-opening of Loria Medical's temporarily closed New York office and other Loria Medical Lorstan-licensee offices – would violate the First Amendment to the Lorstan Operating Agreement. *Id.* at ¶¶ 41-43.

First, Stanise must be put to his proofs through the regular discovery process to demonstrate that he "introduced" Dr. Loria to any of the individual licensee-physicians that he now claims credit for.  His mere saying so in a self-serving affidavit does not make it true nor does it provide grounds for the issuance of an injunction.  Rather, Dr. Loria provided Stanise with a list of target doctors who Dr. Loria wanted to become Lorstan licensee-physicians. *See* Suppl. Loria Dec., ¶ 19.  Dr. Mollura, one of the doctors whom Stanise is complaining of, has been both Dr. Loria's personal friend and professional acquaintance since 1995. *Id.* at ¶ 20.  Dr. Loria was not introduced to him by Stanise. *Id.*  Dr. Mollura introduced Dr. Loria to Dr. Stoller – another doctor that Stanise apparently complains about Dr. Loria's involvement with. *Id.* at ¶ 21.  Again, Dr. Loria was not introduced to Dr. Stoller by Stanise. *Id.*  Lorstan has a licensee-physician located in Texas. Dr. Loria had previously met this doctor in prior dealings and was not introduced to him by Stanise. *Id.* at ¶ 22.  Lorstan's California licensee physicians were part of the list that Dr. Loria put together and provided to Stanise to call.  Dr. Loria was not introduced to these doctors by Stanise. *Id.* at ¶ 23.  Dr. Loria either knew these doctors before

Lorstan was created or the names of the doctors were provided to Stanise by Dr. Loria as potential Lorstan licensees.

Moreover, for the reasons set forth in Dr. Loria's own moving papers and above, the opening of additional Loria Medical male enhancement facilities – which will result in much needed revenue for Lorstan – undermines any notion that Stanise (as the minority owner of Lorstan) could somehow be irreparably harmed by Dr. Loria's actions. Stanise cannot show anything beyond *possible* and *speculative* financial damages as a result of this alleged "potential" conduct. "A mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat 'l Union Fire Ins. Co.*, 934 F .2d 30, 34 (2d Cir. 1995); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (a movant must show "an injury that is **neither remote nor speculative**, but actual and imminent and that **cannot be remedied by an award of monetary damages**") (emphasis added).

As Stanise's own brief states, the case-law in the Second Circuit is clear – mere financial damages are not enough cause for the entry of injunctive relief. *See* Stanise Br. in Opp. to Dr. Loria's Motion for Injunctive Relief, Dkt. No. 22, p. 15 ("Irreparable harm is an '**injury for which a monetary award cannot be adequate compensation**.' *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995)") (emphasis added); *see also Sweeney v. Bane*, 996 F.2d 1384, 1387 (2d Cir. 1993) (also cited by Stanise, and upholding denial of preliminary injunction seeking to prevent erroneous Medicaid co-payments because harm was purely financial); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) ("irreparable injury means injury for which a monetary award cannot be adequate compensation.") Surely, to the extent Stanise's reading of the Lorstan Operating Agreement and his allegation that he introduced Dr. Loria to his professional acquaintances are proven accurate at trial (they will not), monetary damages would

be available to him – though again, Dr. Loria's potential actions will only lead to increased revenue for Lorstan, thus rendering moot any claim for damages.

Nor does Stanise's claim that the Lorstan Operating Agreement's irreparable harm clause meets his necessary showing of irreparable harm pass muster.  Specifically, Stanise cites to a provision in the Lorstan Operating Agreement whereby each party stipulates and agrees that "in the event of such a breach or threatened breach, the other parties hereto will suffer irreparable harm."  Stanise Br., Dkt. No. 23, p. 2 (citing Lorstan Operating Agreement ¶ 19.8).  As an initial matter, that provision cuts both ways as Dr. Loria is also seeking injunctive relief by way of a separate motion related to Stanise's violations of the Lorstan Operating Agreement, and Stanise is claiming a lack of irreparable harm in opposition thereto.  So to the extent the Court finds the Lorstan Operating Agreement's ¶ 19.8 enforceable and persuasive, it would have equal impact on Dr. Loria's own motion for injunctive relief.

However, whether the Lorstan Operating Agreement's ¶ 19.8 is enforceable is not as simple as Stanise posits.  Generally, Federal Courts afford such clauses little, if any, weight and evaluate the evidence presented by the parties to independently determine whether irreparable harm will befall the movant if the court does not issue an injunction.  *See, e.g., Riverside Publishing Co. v. Mercer Publishing LLC*, No. 11-1249RAJ, 2011 U.S. Dist. LEXIS 85853, 2011 WL 3420421  (W.D. Wash. Aug. 4, 2011) (independent determination of federal judge resulted in the denial of injunctive relief, despite the presence of an irreparable harm clause); *see also TVC Albany, Inc. v. Am. Energy Care, Inc.*, No. 1:12-1471 (MAD/CRH),2012 U.S. Dist. LEXIS 164219 (N.D.N.Y. Nov. 16, 2012) (denying motion for preliminary injunction to enforce a non-disclosure agreement, holding that in the absence of any evidence demonstrating irreparable harm, movant could not rely on an irreparable harm clause to meet its burden);

*Guttenberg v. Emery*, No. 13-2046 (JDB), 2014 U.S. Dist. LEXIS 37101, at *33 (D.D.C. Mar. 19, 2014) (finding that such clauses "are not binding on a court.").

The Second Circuit has followed a similar approach by factoring the parties' agreement into the Court's overall analysis of whether an injunction is a proper remedy, but still conducting an independent inquiry into whether irreparable harm does in fact exist. *See Baker's Aid, a Division of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir.1987) ("contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate."); *Firemen's Ins. Co. of Newark, NJ v. Keating*, 753 F. Supp. 1146, 1154 (S.D.N.Y. 1990) ("it is clear that the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate."); *Gramercy Warehouse Funding v. Colfin Jih Funding*, No. 11 Civ. 9715 (KBF), 2012 U.S. Dist. LEXIS 3244, at *11–12, 2012 WL 75431 (S.D.N.Y. Jan. 6, 2012) (declining to enforce the contractual provision because it "contain[ed] no specificity or reference to particular facts" and did not deserve "significant weight" in the court's decision). Accordingly, the irreparable harm analysis the Court must undertake does not begin and end with the parties' agreement.

Stanise has failed to demonstrate irreparable harm. Dr. Loria's alleged *potential* actions, if they come to fruition, would result in Lorstan having increased revenues – not less. Moreover, the purported damages that Stanise bemoans are, at worst, monetary damages which do not accord sufficient grounds for injunctive relief. Having failed to demonstrate irreparable harm based on Dr. Loria's potential opening of certain Loria Medical male enhancement offices and working with certain licensee-physicians, Stanise's cross-motion for injunctive relief must be denied.

### III. DR. LORIA SHOULD NOT BE BARRED FROM WORKING WITH CURRENT LORSTAN LICENSEES OR ANY OTHER PHYSICIANS WHO ARE POTENTIAL OR FUTURE LICENSEES, AS SUCH WORK WILL BENEFIT LORSTAN.

As discussed above and in Dr. Loria's own motion papers, Dr. Loria (as the majority owner of Lorstan and the laboratories it operates) is seeking to find a middle ground by which he can (a) expand the licensee base of Lorstan and thus improve its revenue position, and (b) expand his separate medical practice so that he can continue to make sufficient income to cover the operating expenses of Lorstan. Stanise efforts to tie Dr. Loria's hands are counterproductive to Lorstan's future growth and the ultimate example of cutting off one's nose to spite his face.

In order to be successful at trial, Stanise must make several showings that – at this early stage – he simply cannot make. First, he must demonstrate that Dr. Loria's proposed actions, whereby he would re-open his New York male enhancement facility and open Lorstan-licensee facilities, violates the parties' Lorstan Operating Agreement. It does not. Dr. Loria is seeking to create licensee offices that will work with Lorstan and pay Lorstan money for its Patented Silicone Product, not engage in competition with Lorstan or Lorstan licensee-physicians in nearby geographic areas. Stanise's likelihood of success in this area is, therefore, weak.

Next, Stanise must prove that Dr. Loria intends to work with licensee-physicians whom Dr. Loria was introduced to by Stanise. At this point, the only proof Stanise has of this purported fact is his own self-serving affidavit – which has been rebutted by Dr. Loria's supplemental declaration as discussed above. Stanise did not make these introductions, Dr. Loria already knew these doctors or suggested Stanise call them to gauge their interest in becoming Lorstan licensees. This is not enough for the Court to find compelling evidence that Dr. Loria intends to violate the Lorstan Operating Agreement, again negating Stanise's likelihood of success on the merits. Moreover, whether such a clause is even enforceable is highly

9

questionable. In the medical profession – particularly the relatively small cadre of physicians who provide the type of specialized male enhancement services offered by Dr. Loria – doctors know each other and seek each other out for advice, counsel, and referrals. To temporarily bar Dr. Loria from even communicating with another doctor simply because Stanise may (or may not) have introduced him to that physician through their mutual work at Lorstan seems beyond the scope of the parties' agreement and an unenforceable view of the contract. Stanise's requested injunctive relief is, therefore, inappropriate.[2]

### IV. DR. LORIA SHOULD NOT BE REQUIRED TO MAKE ANY FURTHER CAPITAL CONTRIBUTIONS TO LORSTAN (A NON-PARTY) UNTIL SUCH TIME AS HE IS ALLOWED ACCESS TO LORSTAN OPERATED LABORATORIES, BOOKS AND RECORDS AND STANISE ENDS HIS INTERFERENCE WITH DR. LORIA'S ROLE AS CHIEF MEDICAL OFFICER OF THE COMPANY.

Dr. Loria has alleged, by way of his own motion for injunctive relief, that Stanise is in violation of the Lorstan Operating Agreement for, among other things, locking Dr. Loria out of the company's facilities and medical operations. Stanise, despite his clear contractual breach, seeks an order of this Court requiring Dr. Loria to make further capital contributions to Lorstan. Such an order, requiring payment of monies by Dr. Loria when the parties' contract is in dispute and Stanise is alleged to be in breach of the agreement, would be reversible error. *See, e.g., In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1145 (3d Cir.1982) (reversing the district court's issuance of an injunction, the Circuit Court held that "a preliminary injunction which ordered the payment of monies where the underlying contract is disputed, misconceives the equitable nature and purpose of an injunctive proceeding."); *McCollum v. McCollum*, 67 S.W. 2d 1055, 1056 (Tex. Civ. App. 1934) ("The injunction does not preserve the status quo,

---

[2] In fact, when Lorstan's licensee physicians have concerns, they reach out to Dr. Loria first. Just weeks ago, a Lorstan-licensee physician called Dr. Loria to inquire where his product was since he had paid tens of thousands of dollars for it. Suppl. Loria Dec., ¶ 24.

but, in effect, gives appellee a money judgment for $600.00, which must be paid under the penalty of contempt of court. Money judgments should not be granted or collected in this manner."); *Dorfman v. Boozer*, 414 F. 2d 1168, 1173 n. 13 (D.C. Cir. 1969) (". . . preliminary injunction should not require that one party turn over money to another").

Requiring such capital contributions to be made in light of Stanise's apparent financial chicanery would also be inappropriate. As set forth in Dr. Loria's supplemental declaration, Stanise has not been forthcoming regarding Lorstan's finances, and until recently, Dr. Loria was not aware of (and did not have access to) four separate bank accounts that Stanise had created related to the Lorstan operated laboratories in Georgia, Texas, California, and Florida. *See* Suppl. Loria Dec., ¶ 26. Dr. Loria only became aware of these bank accounts because he stumbled upon information related to them himself during his review of Lorstan's financial papers. *Id.* at ¶ 27. Dr. Loria did not consent to their creation and, until recently, had no access to even view these accounts. *Id.* Rather, Lorstan – until recently – had only one bank account located in Florida at a Wells Fargo bank near Dr. Loria's home. *Id.* at ¶ 28. As a result of Dr. Loria's lockout from Lorstan, that account was closed in or about April, 2020. *Id.*

Thereafter, without Dr. Loria's permission and apparently without granting Dr. Loria signatory authority, Stanise opened a new bank account for Lorstan at a bank in Connecticut. *Id.* at ¶ 29. He has recently granted Dr. Loria remote access to view the account, but Dr. Loria has no check book, debit card, or ability to withdraw or deposit funds in this account. *Id.* As the majority owner of Lorstan, this is not what the parties to the Operating Agreement agreed to. *Id.*

Moreover, Stanise's production of financial documents for review by Dr. Loria's personal accountant has been spotty at best. *Id.* at ¶ 30. Stanise does not provide documents at a

11

regular interval, and has to be asked numerous times for those documents. *Id.* In fact, Stanise has recently ignored Dr. Loria's requests for documentation. *Id.*

Regarding Dr. Loria's capital contributions, in late 2019 he paid approximately $48,000 to Lorstan to purchase medical lab equipment. *Id.* at ¶ 31. Dr. Loria only recently ceased making capital contributions due to his lockout from the company and Stanise's refusal to include Dr. Loria in company decisions. *Id.* at ¶ 32. Dr. Loria also asked Stanise (for several years) to have Lorstan compensate Loria Medical staff for time spent assisting Lorstan. *Id.* at ¶ 33. Dr. Loria's medical staff – whom he is paying out of his own pocket – have spent hundreds, if not thousands of hours assisting Lorstan's operations, including Lorstan's pharmacist, to Stanise's benefit. *Id.* at ¶ 34. Stanise has, throughout, refused to allow Loria Medical to be compensated for its time spent assisting Lorstan. *Id.*

Additionally, Dr. Loria has questioned – without satisfactory answer – why Stanise continues to employ a $10,000 a month payroll for Lorstan during the company's COVID-19 related shutdown. *Id.* at ¶ 35. Lorstan is currently shut down during the pandemic, yet Stanise insists on keeping the entirety of Lorstan's staff on payroll. *Id.* Dr. Loria disagrees with this approach, since he does not even know who is currently on Lorstan's payroll. Nor has Lorstan (to Dr. Loria's knowledge) applied for or received funds pursuant to the federal Payroll Protection Program, which Stanise has not informed Dr. Loria of nor requested approval from Dr. Loria to apply for. *Id.*

Moreover, there are legitimate legal questions regarding whether Stanise, as an individual, is the appropriate party to be seeking this particular relief. Stanise is asking the Court to compel Dr. Loria to make a capital contribution to an entity, Lorstan, which is a non-party. Lorstan will remain a non-party because, as the minority owner, Stanise does not have the

authority to commence a lawsuit against Lorstan's majority owner in Lorstan's name. If Lorstan – the real party in interest – wants Dr. Loria to make a capital contribution, then Lorstan should bring suit against Dr. Loria. It has not and cannot, and therefore Stanise's demand for an order compelling Dr. Loria to make a payment to non-party Lorstan is legally unsupportable. For these reasons, Stanise has little likelihood of success on the merits of this portion of his cross-motion and this relief should be denied.

> **V. DR. LORIA HAS NO INTENT TO TAKE ANY ACTIONS TO HARM LORSTAN, RATHER BY REFUSING TO ALLOW MEDICAL OPERATIONS TO CONTINUE WITHOUT HIS OVERSIGHT, DR. LORIA IS PROTECTING LORSTAN, ITS LICENSEE-PHYSICIANS, AND THEIR PATIENTS FROM POTENTIAL HARM.**

The Court has before it two parties now seeking injunctive relief. One party, a licensed physician and the inventor and patent-holder of the Patented Silicone Product, has serious concerns regarding being locked out of his company's medical operations. His motion for injunctive relief seeks to, among other things, restore his place as Chief Medical Officer and cease Lorstan's medical operations until such time as Dr. Loria is granted access to Lorstan's medical personnel and facilities. The other party, an accountant and minority owner of a limited liability company that was assigned the rights to Dr. Loria's patent, seeks a court order to continue to freeze Dr. Loria out of Lorstan's labs, allow him no say over the company's medical operations, and compel the sale of potentially harmful silicone product over Dr. Loria's objection. This should not be a close call.

Dr. Loria is the majority owner of Lorstan. He has a vested financial and personal interest in its long-term success. Dr. Loria invented and patented Lorstan's only product and compounding formula and assigned his patent to Lorstan. Without this assignment, Lorstan would have nothing to sell. Dr. Loria is a licensed physician who has put his personal and

13

professional reputation on the line by training Lorstan licensee doctors to utilize the Patented Silicone Product.  Dr. Loria's career and long term financial success are riding on Lorstan.  Stanise's illogical argument that Dr. Loria is seeking to destroy the very thing he is depending on for his financial well-being – whether that be the thinly veiled insinuation that Dr. Loria is intent on causing physical harm to the Lorstan operated laboratories, or to engage in harmful competition with Lorstan through Loria Medical, is beyond absurd.  Stanise sees a vast conspiracy against him and Lorstan when, in reality, Dr. Loria is just trying to make a living and push both Lorstan and Stanise to a place of financial stability, success, and independence.  The sooner Lorstan is self-sufficient and off the proverbial dole, the better off Dr. Loria is.  Accordingly, Dr. Loria has no intent to take any actions to harm Lorstan, only to help it.

The public interest does <u>not</u> weigh in favor of allowing Stanise to move forward with re-opening Lorstan as he proposes, but rather clearly weighs in favor of immediately halting Stanise's efforts to open Lorstan's compounding operations without proper medical oversight, i.e. without the guidance and review of Dr. Loria (the company's CMO).  Patient harm from potentially improper compounding methods could result without Dr. Loria's oversight.  We use the word "could" here not because Dr. Loria is suggesting some remote or speculative harm, but rather because he has been locked out of the company's medical process and operations such that he simply has no idea whether Stanise and the compound pharmacist are properly undertaking all measures necessary to ensure the production of a safe and effective Patented Silicone Product.  *See* Loria Dec, Dkt. No. 13-2, ¶¶ 17-19.  The public interest weighs in favor of protecting the public health.  *See, e.g., Hybritech, Inc. v. Abbott Labs.*, No. 86-7461/AK (PX), 1987 WL 123997, at *22 (C.D. Cal. July 14, 1987) (finding public interest required that injunction <u>not</u> stop supply of medical test kits), *aff'd*, 849 F.2d 1446 (Fed. Cir. 1988); *Vitamin Technologists, Inc. v.*

*Wisconsin Alumni Research Found.*, 146 F.2d 941, 956 (9th Cir. 1945) (finding public interest warranted refusal of injunction on irradiation of oleomargarine); *Milwaukee v. Activated Sludge, Inc.*, 69 F.2d 577, 593 (7th Cir. 1934) (refusing injunction against city operation of sewage disposal plant because of public health danger).

## **CONCLUSION**

For the reasons set forth above, Dr. Loria requests that the Court deny Stanise's cross-motion for injunctive relief.

Dated: New York, New York
May 26, 2020

                Respectfully submitted,

                By: */s/ Robert A. Magnanini*
                Robert A. Magnanini
                **STONE & MAGNANINI LLP**
                100 Connell Drive, Suite 2200
                Berkeley Heights, NJ 07922
                (973) 218-1111
                rmagnanini@stonemagnalaw.com
                *Attorneys for Defendant*

**DECLARATION OF SERVICE**

I hereby certify that on this date, I caused to be served on all counsel of record, electronically via the Court's electronic filing system, a true and correct copy of Defendant's Brief in Opposition to Plaintiff Stanise's Cross-Motion Seeking the Entry of Temporary Restraints and a Preliminary Injunction for the Pendency of this Litigation.

Dated: New York, New York
    May 26, 2020

                                              Respectfully submitted,

                                              By: *s/ Robert A. Magnanini*
                                              Robert A. Magnanini, Esq.
                                              **STONE & MAGNANINI LLP**
                                              100 Connell Drive, Suite 2200
                                              Berkeley Heights, NJ 07922
                                              Tel: (973) 218-1111
                                              Fax: (973) 2181106
                                              rmagnanini@stonemagnalaw.com

                                              *Attorneys for Defendant Victor Loria*