Robert A. Magnanini
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
Tel: (973) 218-1111
Fax: (908) 464-3010
*Attorneys for Defendant-Movant Victor Loria, D.O.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOHN STANISE, | Civil Action No. 20-cv-2769 |
| Plaintiff, | |
| v. | |
| VICTOR LORIA, | |
| Defendant. | |

## SUPPLEMENTAL DECLARATION OF DR. VICTOR LORIA IN FURTHER SUPPORT OF DR. LORIA'S MOTION SEEKING THE ENTRY OF TEMPORARY RESTRAINTS AND A PRELIMINARY INJUNCTION FOR THE PENDENCY OF THIS LITIGATION, IN OPPOSITION TO DEFENDANT STANISE'S MOTION SEEKING TEMPORARY RESTRAINTS AND A PRELIMINARY INJUNCTION, AND IN FURTHER SUPPORT OF DR. LORIA'S MOTION SEEKING A CHANGE OF VENUE

I, Victor Loria, D.O., of full age, hereby declare as follows:

1.  I am Victor Loria, D.O., and I am the Defendant in the above-referenced matter brought by my business partner, John Stanise ("Stanise").

2.  I received my medical degree in 1991, and have been a New York licensed physician since 1992, although I currently practice in Florida where I also permanently reside.

3.  I make this Supplemental Declaration in further support of my Motion for a Temporary Restraining Order and Preliminary Injunction, pursuant to Fed. R. Civ. P.

1

65(a) and (b). I also make this Supplemental Declaration in further support of my Motion to Change Venue to the United States District Court for the Southern District of Florida. I also make this Supplemental Declaration in opposition to Plaintiff John Stanise's Motion for a Temporary Restraining order and Preliminary Injunction.

4.      The information below is based on my personal knowledge and is true and correct to the best of my knowledge, information, and belief.

## SUPPLEMENTAL FACTUAL ALLEGATIONS RELEVANT TO MOTION TO CHANGE VENUE

5.      I have to rebut some of the blatant falsehoods set forth in Stanise's opposition papers to my Motion to Change Venue to the Southern District of Florida.

6.      Paragraph 2.5 of the Operating Agreement for Lorstan Pharmaceutical LLC ("Lorstan") states that Lorstan's Principal Office is located at 10773 NW 58th Street, Suite 751 Doral, FL 33178. That Doral, Florida location is a UPS store, but the functional headquarters of Lorstan is (and always has been) the Loria Medical Office in Miami. Moreover, since I am the majority owner, I developed the Patented Silicone Product there, I train Lorstan's licensee-physicians there, and my employees there have dedicated countless hours to assisting Lorstan. To the best of my knowledge, the Lorstan Board of Representatives, which consists of Stanise and myself, has never passed a resolution moving the Lorstan Principal Office to Connecticut.

7.      I perform all of the training of Lorstan's licensee-physicians, although sometimes I am assisted by Miguel Gonzalez, my medical assistant, in training and supporting the Lorstan pharmacist. I also employ Emily Fernandez and Carlos Ferrar to assist in the operations at Loria Medical in Miami, Florida. Upon completing their training, those Lorstan licensee-physicians use documents from my Loria Medical Miami

2

office in providing the silicone oil treatment. Those documents include medical history forms and consent forms.

8.      Florida serves as the nerve center of Lorstan, while Connecticut serves as a back office for Lorstan's billing operations. I developed the intellectual property employed by Lorstan in Florida, including the silicone oil patent and the compounding formula that are Lorstan's only products. I even utilized the Loria Medical compounding lab in Miami, Florida to develop the compounding method for the Lorstan Patented Silicone Product.

9.      My company, Loria Medical, has not had a male enhancement office in New York since I temporarily suspended operations at that location in on or about May 2018 due to the stress of running that office while simultaneously coordinating the operations at the Loria Medical office in Miami, Florida which employs over fifteen individuals. I have not opened any office performing male enhancement procedures in New York since then, but I did maintain both the Loria Medical corporate license in New York and my personal New York medical license. Although I did open a hair restoration office in Miami, FL and Huntington, New York in August, 2018, I am in the process of closing the Huntington facility due to the added expense caused by the COVID-19 pandemic, although the space may be sublet by Dr. Mollura. That facility was staffed by other medical personnel, and I did not travel to New York to perform hair restoration procedures. As such, frequent travel to New York for the purposes of this litigation would be devastating for my Florida medical practice, my Florida-based employees, Lorstan's employees in Connecticut (70% of whose wages I am responsible for), and me (as I work and reside in Florida).

3

10.     Stanise and I are co-owners of FL Facilities Rental, LLC. FL Facilities Rental, LLC is a limited liability company with a principal office located at 1717 Blanding Boulevard, Suite 102, Jacksonville, Florida 32210, through which Lorstan rents property. Stanise is the registered agent of FL Facilities Rental, LLC, using a Florida address as his mailing address. FL Facilities Rental, LLC is the tenant recorded on the lease of a property at the above-referenced Jacksonville, Florida address which has been converted into a compounding laboratory for Lorstan.

11.     A true and accurate copy of the June 24, 2016 email correspondence between Stanise and I is attached hereto as **Exhibit A**. This demonstrates the opening of the Lorstan bank account in Florida.

12.     A true and accurate copy of the January 15, 2019 email correspondence between Stanise and I is attached hereto as **Exhibit B**. This document demonstrates the split of our Lorstan headquarters office is in Florida and the Lorstan back office operations are in Connecticut, and Stanise's future intent to move to Florida himself.

13.     A true and accurate copy of the Electronic Articles of Organization for FL Facilities Rental LLC is attached hereto as **Exhibit C**.

14.     A true and accurate copy of the Limited Liability Company Operating Agreement for FL Facilities Rental, LLC is attached hereto as **Exhibit D**.

15.     A true and accurate copy of the Lease between FL Facilities Rental, LLC and Brian Phillips Properties, LLC for the premises located at 1717 Blanding Blvd., Suite 102, Jacksonville, Florida 32210 is attached hereto as **Exhibit E**. As these documents demonstrate, Lorstan has a Florida laboratory where it leases space from another

4

company owned by Stanise and myself. On the other hand, Lorstan has no currently operating location in New York.

16.    A true and accurate, unredacted copy of the Patent Assignment from myself to Lorstan is attached hereto as **Exhibit F**. The Plaintiff attached a redacted copy to his Declaration. As the Court can see, the unredacted Assignment lists Lorstan's Florida address as the company's principal office.

## SUPPLEMENTAL FACTUAL ALLEGATIONS
## RELEVANT TO INJUNCTIVE RELIEF

17.    Additionally, I write to clarify certain issues raised by Stanise in his own Motion for Injunctive Relief, and in his opposition to my Motion for Injunctive Relief.

18.    First, Stanise improperly claims that I was introduced to various Lorstan licensee physicians through him, and therefore I cannot do business with them pursuant to an amendment to the Lorstan Operating Agreement. That is incorrect.

19.    I provided Stanise with a list of target doctors who I would wanted to become Lorstan licensee-physicians.

20.    Dr. Mollura, one of the doctors whom Stanise is complaining of, has been my personal friend and professional acquaintance since 1995. I was not introduced to him by Stanise.

21.    Dr. Mollura introduced me to Dr. Stoller – another doctor that Stanise complains about my involvement with. Again, I was not introduced to Dr. Stoller by Stanise.

22.    Lorstan has a licensee physician located in Texas. I had previously met this doctor in prior dealings and was not introduced to him by Stanise.

23.    Our California licensee physicians were part of the list that I put together and provided to Stanise to call. I was not introduced to these doctors by Stanise.

24.    In fact, when our license- physicians have concerns, they reach out to me first. Just weeks ago, a Lorstan-licensee physician called me to inquire where his product was since he had paid tens of thousands of dollars for it.

25.    Additionally, Stanise has not been forthcoming regarding Lorstan's finances.

26.    Until recently, I was not aware of (and did not have access to) four separate bank accounts that Stanise had created related to the Lorstan-operated laboratories in Georgia, Texas, California, and Florida.

27.    I only became aware of these bank accounts because I stumbled upon information related to them myself during my review of Lorstan's financial papers. I did not consent to their creation and, until recently, I had no access to even view these accounts.

28.    Lorstan – until recently – had only one bank account located in Florida at a Wells Fargo bank near my home. As a result of my lockout from Lorstan, that account was closed in or about April, 2020.

29.    Thereafter, without my permission and without granting me signatory authority, Stanise opened a new bank account for Lorstan at a bank in Connecticut. He has granted me remote access to view the account, but I have no check book, debit card, or ability to withdraw or deposit funds in this account. As the majority owner of Lorstan, this is not what we agreed to.

30.     Moreover, because of Stanise's locking me out of Lorstan's books and records, I demanded that Stanise produce financial documents for review by my personal accountant, but his efforts have been spotty at best. Stanise does not provide documents at a regular interval, and has to be asked numerous times for those documents. In fact, Stanise has ignored my most recent requests for documentation.

31.     Regarding my capital contributions, in late 2019 I paid approximately $48,000 to Lorstan to purchase medical lab equipment.

32.     I only recently ceased making capital contributions due to my lockout from the company and Stanise's refusal to include me in company decisions. *See, e.g.,* true and accurate redacted copies of Dr. Loria's 2016-2018 K-1 tax forms for Lorstan, attached hereto as **Exhibit G**. In fact, this lockout instituted by Stanise—an accountant by trade—has resulted in Stanise retaining "independent experts" to certify Lorstan's labs, shutting me completely out of the Lorstan production process in recent months. Stanise had no right to do this without my permission and input, and his actions have made me concerned for the safety of end-users of the Lorstan Patented Silicone Product.

33.     I also asked Stanise (for several years) to have Lorstan compensate Loria Medical staff for time spent assisting Lorstan. My Loria Medical staff – whom I am paying out of my own pocket – have spent hundreds, if not thousands of hours assisting Lorstan's operations to Stanise's benefit. Stanise has, throughout, refused to allow Loria Medical to be compensated for its time spent assisting Lorstan.

34.     Additionally, I have questioned why Stanise continues to employ a $10,000 a month payroll for Lorstan during the company's COVID-19 related shutdown. Although Lorstan has been shut down during the pandemic, Stanise insists on keeping the

7

entirety of our staff on payroll, but, because of Stanise's lockout, I do not even know how many employees Lorstan still has. I disagree with this approach, unless Lorstan has applied for and received funds pursuant to the federal Payroll Protection Program, which Stanise has not informed me of nor requested approval from me to apply for.

35.    Accordingly, I have elected to turn off future capital contributions until Stanise agrees to allow my access to the company's medical operations and bank accounts, and until such time as he and I can reach agreement on how to move the company forward in an equitable and appropriate fashion.

I declare under penalty of perjury that the foregoing is true and correct.

Date: May 26, 2020

Victor Loria, D.O.