UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
JOHN STANISE,                                  :
                                               :
        Plaintiff(s),                         :
                                               :       **Case No.: 1:20-CV-02769-VSB**
   v.                                          :
                                               :
VICTOR LORIA,                                  :
                                               :
        Defendant(s).                         :
------------------------------------------------------X


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION AGAINST DEFENDANT VICTOR LORIA**

The Law Offices of Neal Brickman, P.C.
Neal Brickman, Esq.
Jason Stewart, Esq.
*Attorneys for Plaintiff John Stanise*
420 Lexington Avenue, Suite 2440
New York, New York 10170
Tel: (212) 986-6840
Fax: (212) 986-7691
Neal@Brickmanlaw.com
Jason@Brickmanlaw.com

**TABLE OF CONTENTS**

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANT VICTOR LORIA**

I. DEFENDANT FAILS TO REFUTE PLAINTIFF'S STRONG SHOWING OF IRREPERABLE HARM, LIKLIHOOD OF SUCCESS ON THE MERITS AND THE BALANCE OF HARDSHIP IN FAVOR OF THE PLAINITFF AND IGNORES THE PLAIN LANGUGAGE OF THE LORSTAN OPERATING AGREEMENT……………………………………………....  1

    A. Plaintiff Has Established Loria's Misconduct Has Caused And Will Continue To Cause Irreparable Harm……………………………...  2

    B. Loria Is Contractually Prohibited From Opening Multiple Loria Medial Offices……………………………….......................................  3

    C. Loria Is A Faithless Fiduciary Seeking To Destroy Lorstan So Loria's Private Medical Practice Can Usurp Lorstan Business Opportunities, This Violative Conduct Must Be Enjoined……………………………...  4

    D. The Balance of Equities Requires That a Party Who Lies to the Court Must Not be Rewarded ……….……………………………....................  5

II. DEFENDANT HAS REPEATEDLY LIED TO THIS COURT AS PROVEN BY DIRECT CONTRADICTORY EVIDENCE AND HIS DECLARATIONS AND PRAYERS FOR RELIEF SHOULD BE REGARDED AS DEVOID OF MERIT AND RULE 11 SANCTIONS ARE WARRENTED……………...  6

CONCLUSION………………………………………………………………...  10

# **TABLE OF AUTHORITIES**

**Cases:**

*Ibrahim v. United States,*
    650 F. Supp. 163 (N.D.N.Y.), aff'd, 834 F.2d 52 (2d Cir. 1987)………….....     3

*Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.,*
    749 F.2d 124, 125-26 (2d Cir.1984)……………………………………...     2, 3

**Statutes:**

Federal Rules of Civil Procedure ("Fed. R. Civ. Pro.")

Fed. R. Civ. Pro. Rule 11………………………………………………..............     6, 10

    Fed. R. Civ. Pro. Rule 11(b)……………………………………………...     6

    Fed. R. Civ. Pro. Rule 11 (c)(3)…………………………………………..     6

Plaintiff John Stanise ("Stanise") respectfully submits this Reply Memorandum of Law in further support of his cross-motion for a Temporary Restraining Order and Preliminary Injunction compelling Defendant Victor Loria ("Loria") to abide by the obligations and prohibitions contained in the Lorstan Operating Agreement (the "Agreement").

I. **DEFENDANT FAILS TO REFUTE PLAINTIFF'S STRONG SHOWING OF IRREPERABLE HARM, LIKLIHOOD OF SUCCESS ON THE MERITS AND THE BALANCE OF HARDSHIP IN FAVOR OF THE PLAINTIFF AND IGNORES THE PLAIN LANGUAGE OF THE LORSTAN OPERATING AGREEMENT**

Loria's opposition to Stanise's cross-motion is improperly premised on a demonstrable pack of lies and an utter disregard and avoidance of the language of the Agreement that he signed. The opposition does not even attempt to address the substance of the cross-motion. Instead, it consists of a restatement of the meritless arguments put forth in support of Loria's Motion for a Preliminary Injunction. The Cross Motion seeks to enjoin Loria from opening "multiple medical offices'' in violation of the explicit language of Section 17.1(b) of the Agreement. Rather, than address the actual language of the Operating Agreement, Loria mis-paraphrases it and argues that "multiple" does not actually mean more than one. Similarly, Loria attempts to excuse his refusal to fund the Company operations on a pro rata basis on an imaginary "lock-out" and a purported failure to provide him with access to the Company's bank accounts and financial records. This argument is not supported by the true facts. Loria has not been locked out of the business and he has always had access to each of the bank accounts and to all of the Company's books and records. In the absence of any meaningful opposition, the Cross Motion should be granted in its entirety. Loria should also be sanctioned for attempting to perpetrate a fraud on this Court.

Loria states that he has no intent to violate his contractual agreement with Stanise or cause Stanise any irreparable harm, but his conduct proves that exactly the opposite is true. Loria has sought to open, and now even asks this Court to issue an Order allowing him to open, a New York

1

Loria Medical office, in addition to his existing Miami-based office. This is violative of the Agreement. To maintain the status quo and to give some measure of meaning to the bargain which was struck between the parties when they entered into the Agreement, Loria must be stopped.

Notwithstanding his misconduct, Loria has never been "locked out" from Lorstan and has always been afforded the utmost financial transparency, with unfettered access to the Company's books and records. The notion of any type of "lock out" is nothing more than an imagined pretext developed by Loria for him to justify his violative acts taken to pressure Stanise to accede to Loria's demands. Loria feigns concern over changing formulas, patient safety, legal liability and his medical license. He then offers that his undefined "oversight" will, of course, serve as a panacea for all of these feigned concerns. Loria tries to convince the Court that only Loria is capable of doing what is best for Lorstan and all those involved. The truth is Loria is only capable of doing what is best for Loria. He has no interest in seeing Lorstan succeed and his only concern is to procure additional profits by and through his private medical practice, Loria Medical. If Loria is not enjoined, Lorstan will be destroyed.

### A. Plaintiff has Established Loria's Misconduct has Caused and Will Continue to Cause Irreparable Harm

Plaintiff has clearly shown that Loria's actions have caused and will further cause irreparable harm. Loria is on a mission to destroy Lorstan so that he can usurp Lorstan business opportunities for his own personal benefit. If Loria is not enjoined, he will continue to interfere with Lorstan operations and will open competing Loria Medical offices to steal Lorstan business opportunities.[1] However, assuming *arguendo* that Plaintiff has not shown irreparable harm, which

---

[1] Defendant offers no caselaw which refutes the cases cited by Plaintiff demonstrating a sufficient showing of irreparable harm. See *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.,* 749 F.2d 124, 125-26 (2d

by demonstrating that the very existence of Lorstan is in the balance Plaintiff has made a sufficiently strong showing, the Agreement further provides that the parties stipulate to the issue of irreparable harm concerning breaches or threatened breaches of the Operating Agreement. (See Section 19.8 of the Agreement).

### B. Loria Is Contractual Prohibited From Opening Multiple Loria Medical Offices

Plaintiff has demonstrated the likelihood of success based upon a plain reading of the Agreement. Loria's Opposition ignores a plain reading of The First Amendment which states: "Dr. Victor Loria **shall not pursue**, directly or indirectly, other than through Company or a management company which is a subsidiary of Company, **any commercial ventures relating to the opening of multiple medical offices**." (emphasis added).

Loria's offered explanation that the intent of the First Amendment was not to serve as a bar upon Loria from opening a New York office, is unavailing and unsupported. The plain language of the written agreement does not carve out exceptions. The First Amendment was executed within weeks of the lease expiring at Loria's New York based Loria Medical office and, as part of the agreement to execute the First Amendment, it was agreed that Loria would not renew that lease. (Stanise Decl. ₱35). This factual allegation is not rebutted and remains ignored by Loria. That it because the New York Loria Medical office was not temporarily shuttered and was not a going concern at the time that the First Amendment was executed. Even if it was, that fact has no bearing, as the plain meaning of Section 17.1(b) contains no exclusions or carve-outs, and is unambiguous that Loria is not to pursue commercial ventures relating to the opening of "multiple"

---

Cir.1984) (per curiam)( The loss of "an ongoing business representing many years of effort and the livelihood of its [owners] constitutes irreparable harm"); see also *Ibrahim v. United States,* 650 F. Supp. 163 (N.D.N.Y.), aff'd, 834 F.2d 52 (2d Cir. 1987) (irreparable harm established where plaintiff's affidavit attests to a 30% loss of business)

by demonstrating that the very existence of Lorstan is in the balance Plaintiff has made a sufficiently strong showing, the Agreement further provides that the parties stipulate to the issue of irreparable harm concerning breaches or threatened breaches of the Operating Agreement. (See Section 19.8 of the Agreement).

### B. Loria Is Contractual Prohibited From Opening Multiple Loria Medical Offices

Plaintiff has demonstrated the likelihood of success based upon a plain reading of the Agreement. Loria's Opposition ignores a plain reading of The First Amendment which states: "Dr. Victor Loria **shall not pursue**, directly or indirectly, other than through Company or a management company which is a subsidiary of Company, **any commercial ventures relating to the opening of multiple medical offices**." (emphasis added).

Loria's offered explanation that the intent of the First Amendment was not to serve as a bar upon Loria from opening a New York office, is unavailing and unsupported. The plain language of the written agreement does not carve out exceptions. The First Amendment was executed within weeks of the lease expiring at Loria's New York based Loria Medical office and, as part of the agreement to execute the First Amendment, it was agreed that Loria would not renew that lease. (Stanise Decl. ₱35). This factual allegation is not rebutted and remains ignored by Loria. That it because the New York Loria Medical office was not temporarily shuttered and was not a going concern at the time that the First Amendment was executed. Even if it was, that fact has no bearing, as the plain meaning of Section 17.1(b) contains no exclusions or carve-outs, and is unambiguous that Loria is not to pursue commercial ventures relating to the opening of "multiple"

---

Cir.1984) (per curiam)( The loss of "an ongoing business representing many years of effort and the livelihood of its [owners] constitutes irreparable harm"); see also *Ibrahim v. United States,* 650 F. Supp. 163 (N.D.N.Y.), aff'd, 834 F.2d 52 (2d Cir. 1987) (irreparable harm established where plaintiff's affidavit attests to a 30% loss of business)

medical offices. Loria attempts to argue that "multiple" does not actually mean more than one. His argument is nonsense. Plaintiff's likelihood of success is axiomatic.[2] The Agreement says Loria shall not open "multiple" offices. He is threatening, planning and soliciting doctors for his new, yet to be opened, New York based Loria Medical office, to be operated in addition to his existing Miami-based office. This is in direct violation of the Agreement and the opening of the office would do irreparable harm to Lorstan. The Court must enjoin Loria from opening "multiple" medical offices.

The argument that Loria wants to open multiple "Lorstan-licensee Loria Medical locations" is also a farce. What Loria is seeking to do is co-opt Lorstan business opportunities for his own economic benefit, as he is recruiting would-be Lorstan licensee physicians, with whom he intends to enter into fee sharing arrangements, and allowing these physicians to operate under the Loria Medical brand. In engaging in this course of conduct, Loria undermines the Lorstan business model and clearly violates the Agreement.

### C. Loria is a Faithless Fiduciary Seeking to Destroy Lorstan So Loria's Private Medical Practice Can Usurp Lorstan Business Opportunities, This Violative Conduct Must Be Enjoined

With respect to the other injunctive relief sought, it is equally clear that Loria is acting in violation of both the letter and spirit of the Agreement and in breach of his fiduciary duties. Loria is refusing to uphold his end of the bargain struck when the Agreement was executed. (Stanise Suppl. Decl. ¶¶ 19, 20). Loria is refusing to train doctors. (*Id.*) Loria is refusing to provide technical support for pharmaceutical and medical matters. (*Id.*) Loria is refusing to provide capital contributions. (*Id.*) Loria is actively interfering with and sabotaging Lorstan operations, by for

---

[2] The Merriam-Webster dictionary defines the word multiple as: "consisting of, including, or involving more than one".

4

example, unilaterally closing, and emptying out, Lorstan's bank account. Loria has also engaged in a campaign of harassment, including the sending of countless longform ranting emails which make ad hoc demands, and which contain threats intended to further sabotage Lorstan and create pressure on Plaintiff to accede to Loria's demands. (*Id.*) These behaviors are clearly in violation of the Agreement and Loria's fiduciary duties. Plaintiff's likelihood of success on the merits of the claims that arise from Loria's obvious breaches of fiduciary duties and contractual obligations has been sufficiently established by a strong showing. Loria's attempt to rebut and justify his violative conduct by virtue of his imagined "lock out" and his feigned concerns about a change to the formula, patient safety, legal liability, and potential exposure to his medical license have been shown to be demonstrably untrue and must be disregarded as the pretextual red herring arguments that they are. Loria's true intent is to destroy Lorstan and to allow Loria Medical to steal presently available business opportunities in violation of the Agreement.

### D. **The Balance of Equities Requires That a Party Who Lies to the Court Must Not be Rewarded**

Lastly, the balances of equities must favor the Plaintiff as public policy supports upholding unambiguous contracts between consenting parties. Furthermore, the balance of equities mandates that a party that openly lies to the Court should not be rewarded. Here, as discussed in detail below, Loria has repeatedly lied to this Court and has failed to rebut or address the multiple instances where his lies have been exposed. Loria must be held accountable for making repeated blatant lies and his attempts to perpetrate a fraud on the Court.

## II. DEFENDANT HAS REPEATEDLY LIED TO THIS COURT AS PROVEN BY DIRECT CONTRADICTORY EVIDENCE AND HIS DECLARATIONS AND PRAYERS FOR RELIEF SHOULD BE REGARDED AS DEVOID OF MERIT AND RULE 11 SANCTIONS ARE WARRANTED

Plaintiff declines to separately move for sanctions under Rule 11. However, Rule 11 (c)(3) allows that the Court may, "on its own, … order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." As Loria has brazenly lied to the Court, Plaintiff is compelled to bring to the Court's attention the sheer volume and magnitude of mistruths advanced by Loria in the early stages of this proceeding. Despite having the opportunity to address, retract or correct his lies that were demonstrably proven by the Stanise Declaration dated May 19, 2020, Loria instead has chosen to ignore the fact that he has been proven to be a liar and opts instead to merely offer more lies. This conduct is egregious and is clearly sanctionable. A brief discussion of Loria's mistruths and outright lies is included below. A more detailed delineation of those lies is set forth in Stanise's Original and Supplemental Declarations submitted herewith.

Loria has plainly ignored the plain language of the First Amendment of the Operating Agreement which states that Loria "**shall not pursue**…**any commercial ventures relating to the opening of multiple medical offices**." Rather than address this unambiguous restraint on Loria's ability to open a New York office, Loria instead mis-quotes and mis-paraphrases the Operating Agreement to the Court, stating: "Loria is simply seeking to re-open a New York male enhancement office that pre-dates the creation of Lorstan and which operated as a going concern until 2018." (MOL in Opposition at 3).

Similarly, Loria ignores the entire discussion disproving his over-simplification of Lorstan's business model. Within Stanise's earlier Declaration, a detailed description of the

6

Lorstan business model, including the documents and agreements used by Lorstan in the course of operations, is set forth rebutting Loria's misstatements and mistruths. (See Stanise Decl. ¶¶10-17.) Contrary to Loria's description, Lorstan clearly does not manufacture or sell pharmaceuticals.

In Loria's Declaration dated May 4, 2020, Loria tells this Court that "Stanise informed me on April 23, 2020, that he intends to modify or change both the ingredients in the Patented Silicone Product and the method that it is compounded." Loria Decl. ¶21. This falsehood was addressed in Stanise's May 19, 2020 declaration, including the exhibiting of the exact emails exchange on April 23, 2020 and the series of emails that followed. (Stanise Decl. ¶ 18.)[3]   Loria knew he was lying when he made that statement to the Court in the first instance.  Similarly, Loria's first Declaration states that Lorstan's operation stands to put his medical license at risk. Loria Decl. ¶19. This fact was refuted in detail by way of the explanation that all Lorstan compounding is done under the auspices of the medical license of the Lorstan licensee physicians. Stanise Decl. ¶ 19-21.

Within Loria's Supplemental Declaration, much is made by Loria regarding his access allegedly being limited to Lorstan's bank accounts, accounting records and the labs. In the years that Stanise has been partners with Loria, Stanise has never, in any way restricted Loria's access to Lorstan's finances, financial records or physical laboratories. (Stanise Supp. Decl. ¶ 6).
Loria has always had full access to all Lorstan and lab bank accounts and all of the Company's accounting and financial records. (Stanise Supp. Decl. ¶¶ 7, 8). Loria tells this Court that "As a result of my lockout from Lorstan, that account was closed in or about April 2020." Loria Supp. Decl. ¶28. Loria was never, and has never been, "locked out" of Lorstan. Rather, Loria's unilateral closing of the Lorstan bank account on March 31, 2020 came two days before the filing of this

---

[3] Within those emails exhibited to Stanise's earlier declaration as Exhibit E, Stanise unequivocally tells Loria: "You must have misunderstood my prior emails as there has been no changes to the compounding process." (See Exhibit "E" to Stanise Decl.)

7

lawsuit and was another step in Loria's escalating efforts to sabotage Lorstan and prevent Lorstan from doing business.  (Stanise Supp. Decl. ¶ 9).

Furthermore, Loria is absolutely lying when he tells the Court that, he "only recently became aware of the separate bank accounts that Stanise had created related to the Lorstan-operated laboratories in Georgia, Texas, California and Florida." Loria Suppl. Decl. ¶¶ 26, 27.) Loria knew of those accounts since the day each was opened , and was a signatory to every one of those bank accounts. Loria even signed paperwork in connection with the opening of each of these bank accounts—copies of bank forms signed by Loria are attached to Stanise's Supplemental Declaration as **Exhibit "A"**. (Stanise Suppl. Decl. ¶¶ 14.)

Loria states that due to his imagined lock-out, he demanded that Stanise "produce financial documents for review by his personal accountant, but [Stanise's] efforts have been spotty at best" and that "Stanise does not provide documents at a regular intervals" and that "[Stanise] has ignored my most recent requests for documentation." Loria Suppl. Decl. ¶ 30.

The amount of mistruth packed into that statement requires a detailed response. For one, Loria has never been "locked out" of any part of Lorstan's business or out of Lorstan's books and records. In February of 2019, not when Loria's feigned and imagined "lockout" occurred--Loria asked that complete copies of the books and records be sent to his personal accountant Edward Lampbert. That request was immediately complied with and that established practice and protocol has remained in effect to date. Mr. Lampert receives financial reports on a quarterly basis consisting of hundreds of pages of documentation and has unfettered remote access to the Lorstan bank accounts—he can access them at any time. (Stanise Supp. Decl. ¶ 17). Emails to Mr. Lambert furnishing all documents in records in February 2019 as requested is annexed to Stanise's Supplemental Declaration as **Exhibit "B"**.

Loria attempts to bolster his false narrative by citing to several ad hoc requests for various documents and records that he already had in possession. The idea that 1) Loria was locked out of the Lorstan books and records; 2) that the efforts to provide Loria's personal accountant with records has been spotty; and 3) that Stanise ignored Loria's requests for financial records or access to the books and records, are all outright lies. (Stanise Supp. Decl. ¶ 19). Similarly, Loria's request regarding lab keys and access codes is another is another strawman that attempts to justify his violative and destructive behavior.[4] (Stanise Suppl. Decl. ¶ 19).

Loria also blatantly lies in his Declaration about the Jacksonville, Florida laboratory. (Loria Suppl. Decl. 10-15). Loria would have this Court believe that Lorstan has a fully functional and operation laboratory in Jacksonville, Florida. It does not. (Stanise Suppl. Decl. ¶¶ 31, 32.) Loria also overstates the role of his Florida office. Loria Suppl. Decl. ¶8. While there is no dispute that Loria operates his Loria Medical business out of Miami, Florida, the only connection Lorstan has to Florida is that Loria has trained five (5) Lorstan licensee physicians out of his Florida offices. (Stanise Suppl. Decl. ¶ 33).

Also, Loria lies to the Court about Lorstan's continuing operations and response to COVID-19. Its employees are able to work remotely, and Lorstan has continued to engage in business as usual during the government mandated COVID-19 business closures. The number of Lorstan employees has not changed. Loria knows this. In fact, on April 23, 2020, in connection with a request for a capital contribution, Loria was provided with a full financial reporting that detailed all of Lorstan's outgoing expenditures between November 18, 2019 and April 23, 2020,

---

[4] Upon information and belief, these requests were made solely for the purpose of developing Loria's false narrative. Stanise remains legitimately concerned that, given Loria's escalating campaign to sabotage Lorstan, if Loria is provided access to the labs at this juncture he will remove necessary equipment or materials to prevent Lorstan from being able to do business, just as he did when he closed the Lorstan Wells Fargo bank account.

which includes all the details showing paychecks issued to Lorstan's two employees Joanna Foy and Nicole Langer. (Stanise Suppl. Decl. ¶ 21.)

Even while this argument completely misses the point, Loria also continues to lie to the Court about his shuttered New York Loria Medical office, claiming he "temporarily suspended operations at that location in on or about May 2018." (Loria Suppl. Decl. ¶ 9) In his most recent Declaration, Loria also now offers new lies. For example, Loria lies about the amount of time and effort he and his Loria Medical staff have contributed towards Lorstan and about Loria's Miami-based medical office serving as a "nerve center" for Lorstan. (Stanise Suppl. Decl. ¶¶ 30, 33).

Rule 11 of the Fed. R. Civ. Pro. requires that, "when presenting a paper to the court, the presenter certifies that (1) the paper is not presented for an improper purpose; and (2) <u>reasonable inquiry was made into the factual and legal contentions made</u>." These are not high hurdles, and the touchstone is not the ultimate merit of the arguments (unless the arguments are so entirely frivolous that the absence of factual or legal inquiry is obvious). Here, the Defendant has clearly failed to meet the minimum requirements of reasonable inquiry as to the truthfulness of the factual contentions made. Instead, effectively, their client lies and the lawyers simply swear to it.

## **CONCLUSION**

Plaintiff respectfully asks this Court to do precisely what the Lorstan Operating Agreement provides for: Enjoin Loria from opening multiple medical offices and from sabotaging Lorstan in order to steal Lorstan's business opportunities for Loria's own personal gain. For the foregoing reasons, Plaintiff's cross motion for a temporary restraining order and preliminary injunction should be granted.

Dated: New York, New York
June 2, 2020

                                        The Law Offices of Neal Brickman, P.C.
                                              *Attorneys for Plaintiff*

                                     By:    /s/ Neal Brickman_____
                                                  Neal Brickman
                                                  Jason A. Stewart